[Cite as *State v. Byrd*, 2012-Ohio-2659.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                          :

    Plaintiff-Appellee                 :          C.A. CASE NO.   24583

v.                                     :          T.C. NO.    10CR1804

RODNEY C. BYRD                         :          (Criminal appeal from
                                                  Common Pleas Court)

    Defendant-Appellant            :


                                       :

        . . . . . . . . . .

**O P I N I O N**

Rendered on the    15th    day of     June    , 2012.

        . . . . . . . . . .

MELISSA M. REPLOGLE, Atty. Reg. No. 0084215, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
       Attorney for Plaintiff-Appellee

KRISTINE E. COMUNALE, Atty. Reg. No. 0062037, Assistant Public Defender, 117 S. Main Street, Suite 400, Dayton, Ohio 45422
       Attorney for Defendant-Appellant

        . . . . . . . . . .

FROELICH, J.

{¶ 1}    Rodney Byrd was charged with possession of crack cocaine.  He moved to suppress the crack cocaine, and after a hearing, the trial court overruled the motion.  Byrd pled no contest to the charge and was sentenced to community control.  Byrd appeals from

his conviction, claiming that the trial court erred in denying his motion to suppress. He contends that the pat down was unlawful because it was unjustified and, even if it were justified, it was too broad.

{¶ 2} In reviewing the trial court's ruling on a motion to suppress, we accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Olden*, 2d Dist. Montgomery No. 23137, 2010-Ohio-215, ¶ 21. But we "'independently determine, as a matter of law, whether the facts meet the appropriate legal standard.'" *Id*., at ¶ 21, quoting *State v. Morgan*, 2d Dist. Montgomery No. 18985, 2002-Ohio-268.

{¶ 3} The trial court stated its findings of fact, analysis, and legal conclusions on the record at a hearing held a few days after the evidentiary hearing on the motion to suppress. The trial court's statement of the facts, which we find are supported by competent, credible evidence, is as follows:

On June 6th, 2010, Dayton Officer John Howard and his partner, Officer Beavers, were working a special assignment prompted by a series of burglaries occurring in the Belmont and Patterson Park neighborhoods in Dayton's east side.

The first part of the shift, which was the shift occurring between 8:00 p.m. and 4:00 a.m., was spent in the Belmont/Patterson Park neighborhoods with the second part of the shift being spent in the area where it was suspected that the items taken in the burglaries were either being exchanged for drugs or sold to purchase drugs.

This second area, generally speaking, is in the area of Xenia Avenue,

Burkhardt Avenue and Huffman Avenue, again, on Dayton's east end.

Officers Howard and Beavers, at 11:09 p.m., were in the second phase of the shift. The officers were patrolling Martz Avenue which runs from Burkhardt Avenue to Huffman Avenue when they observed Mr. Byrd walking in the roadway on Martz, thus committing a jaywalking violation.

The officers decided to stop Mr. Byrd to issue him a citation for the jaywalking offense. The stop of Mr. Byrd occurred, it seems, without incident.

Officers Howard and Beavers had an encounter with Mr. Byrd the previous day, June 5th, based upon a citizen's report that Mr. Byrd and two other individuals were armed and selling drugs. This encounter with Mr. Byrd, which occurred about two blocks from Martz Avenue, failed to reveal either drugs or guns on Mr. Byrd's person.

Further, based on a field interview note displayed on the police computer within the cruiser, Officer Howard was aware that Mr. Byrd some time in 2009, reportedly ran from a (quote) dope house (end quote).

Finally, the officers were aware that Mr. Byrd is apparently a member of a gang known as the Dayton View Hustlers and that Mr. Byrd, as a result, is on a list called the CIRGV list, the Community Initiative to Reduce Gun Violence list.

* * *

Officer Howard, after grabbing Mr. Byrd's shirt, asked Mr. Byrd if he

had anything in his possession, guns, knives, weapons, anything that can hurt me. Mr. Byrd responded in the negative.

Officer Howard, in a conversation that Officer Howard described as being fluid, then asked Mr. Byrd: Do you have anything I need to know about? Mr. Byrd informed Officer Howard that in his right jeans' pocket he had a bag of marijuana.

This is an appropriate time to discuss the clothing Mr. Byrd was wearing. And I must admit I had some difficulty; I listened to that testimony on more than one occasion about the clothing that Mr. Byrd had on that day. But I think I understand.

Mr. Byrd, in addition to a long shirt that he was wearing outside of his pants, was wearing a pair of jean shorts which were low on his body with the top of the pants, what I'll call the waistband, being positioned below Mr. Byrd's buttocks. And actually somewhere around Mr. Byrd's mid-thigh area, and being secured in this position with a belt.

Mr. Byrd, underneath the jean shorts, was also wearing a pair of nylon basketball shorts, with the shorts worn in a more traditional fashion; that is, with the waistband being around that which would approximate Mr. Byrd's waist.

However, the bottom of the right pocket had been cut out, allowing something dropped into this pocket to fall through the pocket and become entrapped in the lining of the shorts.

Officer Howard, upon being informed of the marijuana, reached into Mr. Byrd's pant pocket to retrieve the marijuana. [Officer Howard], in doing so, felt two items that felt like small rocks or pebbles. Officer [Howard] indicated that when he initially felt the two items, he did not immediately know what the items were.

* * *

And I note that Officer Howard also testified that the two rock-like items appeared to be located in the lining of the basketball shorts, near the bottom of the shorts.

Officer Howard, upon feeling the two items, which he did not believe to be weapons, pulled up Mr. Byrd's jeans and conducted a pat down of the outside of the jeans. Officer Howard once again felt the two pebble-like objects.

And this is testimony that I listened to, quite honestly, over and over again, trying to make sure that I understood that which Officer Howard was conveying. And I have concluded that, after very carefully listening to the testimony on multiple occasions, that Officer Howard testified as follows:

Officer Howard testified how the objects felt to him – I'm talking about when he was doing the pat-down search on the outside of the jeans after the retrieval of the marijuana. He testified about previous recovery of crack or heroin in the lining of mesh basketball shorts and he concluded, based upon that which he was feeling and his experience, that the objects were

either crack or heroin.

Officer Howard at this point retrieved the items which, of course, turned out to be crack cocaine.

The final factual issue concerns Officer Howard's decision to perform a pat-down search upon Mr. Byrd. Officer Howard indicated that the rationale for this decision included the area where the stop occurred and Mr. Byrd's membership with the Dayton View Hustlers. And the criminal activity identified with the group know as the Dayton View Hustlers. [Howard had testified that this group is a violent gang that "has been responsible for eight of the homicides that we've had in the 2009 * * * and six of the ones that we had in 2008." (Tr. 33-34). Howard said that gang members have been convicted of federal gun-related charges. It is extremely likely, said Howard, that members of this gang are armed.] (Tr. 42-46).

{¶ 4} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry,* police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin,* 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry.* We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Heard,* 2d Dist. Montgomery No.

19323, 2003-Ohio-1047, ¶ 14, quoting *State v. Andrews,* 57 Ohio St.3d 86, 87-88, 565 N.E.2d 1271 (1991). The officer must have more than an inchoate hunch or suspicion to justify an investigatory stop.

{¶ 5} "Authority to conduct a patdown search for weapons does not automatically flow from a lawful stop[.]" *State v. Stewart,* 2d Dist. Montgomery No. 19961, 2004-Ohio-1319, ¶ 16. Once a lawful stop has been made, the police may conduct a limited protective search for concealed weapons if the officer reasonably believes that the suspect may be armed or a danger to the officer or to others. *State v. Evans,* 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993); *State v. Molette,* 2d Dist. Montgomery No. 19694, 2003-Ohio-5965, ¶ 13. "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence * * *." *Evans* at 408, quoting *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

{¶ 6} Under the plain feel doctrine, an officer conducting a patdown for weapons may lawfully seize an object if he has probable cause to believe that the item is contraband. *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *State v. Phillips,* 155 Ohio App.3d 149, 2003-Ohio-5742, 799 N.E.2d 653, ¶ 41-42 (2d Dist.). The "incriminating character" of the object must be "immediately apparent," meaning that the police have probable cause to associate an object with criminal activity. *Dickerson,* 508 U.S. at 375; *State v. Buckner,* 2d Dist. Montgomery No. 21892, 2007-Ohio-4392. The officer may not manipulate the object to identify the object or to determine its incriminating nature. *Dickerson,* supra; *State v. Lawson,* 180 Ohio App.3d 516, 906 N.E.2d 443,

2009-Ohio-62, ¶ 25 (2d Dist.).

{¶ 7} In the present case, the police observed Byrd jaywalking, and they were authorized to stop Byrd to issue him a citation for that offense. *See State v. Lovins*, 2d Dist. Montgomery No. 23530, 2010-Ohio-3916, ¶ 11. Once Byrd admitted, in what was a non-custodial dialogue, to having marijuana in his pocket, the officers were permitted to go into his pocket and to seize the marijuana. We agree with the trial court that the seizure of the marijuana was lawful.

{¶ 8} While retrieving the marijuana, Officer Howard felt two items that felt like small rocks or pebbles, but he "did not immediately know what the items were." Howard did not, however, believe the items were weapons. Because the incriminating nature of the item was not immediately apparent, the officer could not manipulate the object or reach into Byrd's pocket to determine what it was or ascertain its incriminating nature. *Dickerson*'s plain feel exception was not applicable.

{¶ 9} The officer then pulled up the jean shorts and conducted a pat down during which he felt what he concluded was crack cocaine or heroin, both of which are contraband. Thus, the incriminating nature of the "small items" in Byrd's pants was discovered during this pat down, and the seizure of the crack cocaine was lawful to the extent this pat down itself was constitutionally justified.

{¶ 10} In addressing this issue, the trial court first acknowledged that a credible argument could be made that the pat down was not justified:

It can certainly be argued that Mr. Byrd, since he had been cooperative, had

made no threats or otherwise taken any action to trigger a concern, that he

was armed and thus dangerous, that Officer Howard should simply have issued a citation for the marijuana, a citation for the jaywalking and not performed a pat-down search upon Mr. Byrd's person.    (Tr. 52).

{¶ 11}  The trial court ultimately concluded that the pat down was justified, given Byrd's affiliation with the Dayton View Hustlers.  The court stated that "the criminal activities associated with this group gave Officer Howard the needed articulable suspicion that Mr. Byrd was armed and dangerous."  The court further considered that time of night and the area of Dayton in which the stop had occurred.  The court concluded that all of the facts, considered together, created a reasonable belief that Byrd was armed and that the pat down was justified even though Byrd was handcuffed when the pat down occurred.  The court noted that a handcuffed individual might still access a weapon and that "if Officer Howard had not performed a pat-down search, Mr. Byrd, after the citations were issued, would, of course, have been free to leave, leaving the officers in a dangerous, vulnerable situation."

{¶ 12}  We disagree with the trial court's conclusion that Officer Howard was justified in patting down Byrd after retrieving the marijuana.  The officer testified that the decision to pat down Byrd was based on the area in which the stop occurred and Byrd's gang membership.  *Terry* requires a particularized suspicion developed by the officer with respect to each individual suspect.  "One's status as a gang member, however, even a gang member with a known arrest or conviction record, does not, without more, create the reasonable and articulable suspicion necessary to justify an investigative detention."  *United States v. Daniel*, 804 F.Supp. 1330, 1335, fn. 10 (D.Nev.1992).  Such knowledge may certainly be a

component of the required articulable suspicion, but it must be accompanied by something more to ensure that an officer has a "particularized and objective basis" for suspicion. (Internal citations omitted.) *United States v. Amoroso*, 257 F.Supp.2d 310, 315, fn. 9 (D.Me.2003).

{¶ 13} Here, the officer stopped Byrd for jaywalking. The officer had stopped him the day before and found no weapons. Byrd was cooperative. The officer seized marijuana which Byrd volunteered that he possessed. The only testimony about the neighborhood is that it was an area where it was suspected that stolen goods were sold for drugs. There was insufficient basis to believe that this particular defendant at this particular time and location was armed and dangerous and, thus, the pat down, during which the crack cocaine was found, was not permissible.

{¶ 14} The sole assignment of error is sustained.

{¶ 15} The judgment of the trial court will be reversed, and the case will be remanded for further proceedings.

. . . . . . . . . .

GRADY, P.J., concurs.

HALL, J., dissenting:

{¶ 16} I disagree and would affirm the denial of the defendant's motion to suppress.

{¶ 17} The discrete questions here are whether the arresting officer was constitutionally permitted to continue to pat down the defendant after the defendant admitted that he had a small amount of marijuana in his possession, and whether the plain feel

doctrine allowed retrieval of crack cocaine from the defendants shorts.

{¶ 18}    With regard to the pat down, the trial court's reasoning, with parentheticals added, was as follows:

> * * * Mr. Byrd's affiliation with the Dayton View Hustlers [a local gang] and the criminal activities associated with this group gave Officer Howard the needed articulable suspicion that Mr. Byrd was armed and dangerous.
>
> This is particularly so given the time of night that the stop occurred [about 11:00 PM] and the area in which the stop occurred.  I concluded that these factors come together to make the pat-down decision more than a mere hunch.  This is so even though Mr. Byrd was handcuffed at the time the pat-down search occurred.
>
> I come to this conclusion first because it has been recognized that a handcuffed individual may still be able to gain access to a weapon.  This was noted again by the recent decision in *State v. Victoria*, 2010 Ohio 4536 at paragraph 33.
>
> And secondly, and perhaps more importantly, if Officer Howard had not performed a pat-down search, Mr. Byrd, after the citations were issued, would, of course, have been free to leave, leaving the officers in a dangerous, vulnerable situation. (Tr. 52-53).

{¶ 19}    In addition, the court's facts indicate further reasonable suspicion by the officer:

Officers Howard and Beavers had an encounter with Mr. Byrd the previous day, June 5th, based upon a citizen's report that Mr. Byrd and two other individuals were armed and selling drugs. This encounter with Mr. Byrd, which occurred about two blocks from Martz Avenue, failed to reveal either drugs or guns on Mr. Byrd's person.

Further, based on a field interview note displayed on the police computer within the cruiser, Officer Howard was aware that Mr. Byrd some time in 2009, reportedly ran from a (quote) dope house (end quote).

Finally, the officers were aware that Mr. Byrd is apparently a member of a gang known as the Dayton View Hustlers and that Mr. Byrd, as a result, is on a list called the CIRGV list, the Community Initiative to Reduce Gun Violence list.

* * *

Howard had testified that this group [Dayton View Hustlers] is a violent gang that "has been responsible for eight of the homicides that we've had in the 2009 * * * and six of the ones that we had in 2008." (Tr. 33-34). Howard said that gang members have been convicted of federal gun-related charges. It is extremely likely, said Howard, that members of this gang are armed.

{¶ 20} Given all of the above undisputed factual circumstances, I disagree that mere gang membership was the officers' only justification for the pat down. I agree with the trial court that a pat down of the defendant was constitutionally justified.

{¶ 21} With regard to the plain-feel doctrine, the trial court concluded: "Officer

Howard was lawfully performing a pat-down search. He, upon feeling the objects, felt they were contraband and there is nothing in the record to suggest that he manipulated the objects before he came to this conclusion." (Tr. 53-54). We should defer to the trial court's factual determination that the officer did not manipulate the objects he knew were contraband. Accordingly, I also agree with the trial court's resolution of the plain-feel issue.

{¶ 22} I would affirm the trial court's denial of the defendant's motion to suppress.

. . . . . . . . . .

Copies mailed to:

Melissa M. Replogle
Kristine E. Comunale
Hon. Michael L. Tucker