[Cite as *State v. Millerton*, 2015-Ohio-34.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellant | : | C.A. CASE NO.   26209 |
| v. | : | T.C. NO.   13CR1502 |
| JAMES MILLERTON | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the _____9th_____ day of _____January_____, 2015.

. . . . . . . . . .

KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellant

CHARLES L. GROVE, Atty. Reg. No. 0029144, Assistant Public Defender, 117 S. Main Street, Suite 400, Dayton, Ohio 45422
    Attorney for Defendant-Appellee

. . . . . . . . . .

FROELICH, P.J.

{¶ 1}    The State appeals the trial court's order which granted a motion to suppress

all evidence obtained during the arrest of James Millerton for carrying a concealed weapon. For the following reasons, the order of the trial court will be affirmed.

{¶ 2}     In the afternoon on May 12, 2013, at approximately 4:30 p.m., Millerton was stopped for jaywalking after officers observed him walking southbound in the street on Eastview Avenue, in a residential neighborhood in the City of Dayton. Eastview Avenue is a narrow street which has no edge lines, no sidewalks, no curb, no shoulder and no crosswalk lines. There is conflicting testimony about the manner in which Millerton crossed the intersection at Eastview and Norman, but this issue was not relevant to the trial court's findings, as the court stated, "No matter." Decision at pg. 2.

{¶ 3}     This is supported by the officer's testimony that, "we decided at that point [when we saw him on Eastview] we were going to stop him to issue a citation and my partner, Officer Rose, was driving at the time, pulled up to Mr. Millerton who was now crossing over Norman towards the - - I am not sure you can still see it. This building, it's 102 East Norman. As he was traveling down the street, he crossed over and was now on the I guess it's the southeast corner and that's when we decided to or that's when we attempted to make contact with him."   Transcript pg. 11, lines 7-14

{¶ 4}     The court found that the officers stopped the cruiser, intending to cite Millerton for jaywalking, and he complied with an order to stop.   The court found that after Officer Phillips exited the cruiser, the officer held Millerton by the arm, and began a pat down for officer safety, "because the area was known to the Officers as a high crime area." Decision at pg. 2. The court found that "Officer Phillips articulated no other basis for the *Terry* pat down. Namely there was nothing suspicious about Defendant's appearance or

actions. For example, Officer Phillips observed no 'bulging' pockets, and Defendant did not make any suspicious or furtive movements." Decision at pg. 2. This is supported by the testimony of Officer Phillips, who in response to a question asking what happened when he first made contact with Millerton, stated, "At that point based off the area we were working, again since it is such a high crime area and his actions of walking into the front yard and not immediately stopping, I was planning on placing him in the back seat of the cruiser so that I could issue a citation." Transcript pg. 12, lines 18-22. The court's finding is also supported by the testimony of Officer Phillips, on cross examination, as follows:

Q. Okay, was there anything unusual about the way he was dressed on that particular day?

A. No, sir.

Q. Nothing that would indicated the presence of a weapon to you?

A. No, sir.

Q. And he didn't reach into his pockets or pull open the side of his coat or shirt or anything like that and reach for his waistband, did he?

A. No, sir.

Q. Okay, so it was what? The area was the reason you decided to pat him down?

A. Yes, sir.

Transcript pg. 24, lines 2-14.

{¶ 5} The court also found, "as a matter of fact," that at the time of the stop, Millerton was not free to leave and was seized. Decision at pg. 2 fn.5. This fact is supported by the officer's testimony when he stated:

Q. You had already asked him or actually you had told him to stop?

A. Yes, sir.

Q. And he continued to walk you said?

A. Correct.

Q. So you seized him at that point?

A. Yes, sir.

Transcript pg. 23, lines 5-14. The officer further testified that when he asked Millerton if he had any weapons, Millerton "was not free to leave". Transcript pg. 24, lines 21-22.

{¶ 6} There is conflicting and contrary testimony about whether the officer grabbed Millerton's arm and began the pat down or whether the pat down came after the inquiry about weapons. However, the court found factually that "as he [the officer] began the pat down, with defendant in custody and without Mirandizing him, Officer Phillips inquired if Defendant had any weapons." Decision at pg. 2. The trial court also found, "as a matter of fact, that Officer Phillips did not articulate a reasonable suspicion to conduct a *Terry* pat down of Defendant." Decision at pg. 4.

{¶ 7} After Millerton said he was carrying a knife and a gun, Officer Phillips handcuffed Millerton, retrieved the weapons, and arrested him for carrying a concealed weapon. A *Miranda* warning was given after Millerton was placed in the cruiser.

{¶ 8} The trial court granted Millerton's motion to suppress based on a conclusion that the officer had no legal basis for the stop. The trial court, sua sponte, declared that the jaywalking ordinance was unconstitutional because the dictates of the applicable ordinance which require pedestrians to walk "as near as practicable" to the side of

the road are so ambiguous and vague as to be unenforceable. Decision at pg. 4. The trial court concluded that the officer's custodial interrogation of the defendant without first Mirandizing him was a violation of the defendant's constitutional rights. Decision at pg. 5.

## I. Assignment of Error

{¶ 9}    The State raises one assignment of error on appeal, as follows:

OFFICER PHILLIPS' STOP, DETENTION, PAT DOWN AND QUESTIONING OF MILLERTON WERE CONSTITUTIONALLY VALID. THE TRIAL COURT COMMITTED ERROR WHEN IT SUSTAINED MILLERTON'S MOTION TO SUPPRESS

{¶ 10} The State lists seven reasons why the court erred in suppressing the evidence. Several of the issues assert that it was improper for the court to cite the unconstitutionality of the ordinance to conclude that the officer did not have a legally sufficient basis to stop the defendant. One of the issues argues that the officer did have a reasonable basis to conduct a pat down; one of the issues asserts that the trial court erred by finding that Millerton was in custody at the time he was questioned; and one issue challenges the court's factual finding that the officer had begun the pat down before he asked about weapons.

## II. Standard of Review

{¶ 11} When reviewing a motion to suppress, we must accept the trial court's findings of fact, if they are supported by competent, credible evidence. *State v. Love*, 2d Dist. Montgomery No. 23902, 2011-Ohio-1287. In ruling on a motion to suppress, "the trial court assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford,* 93 Ohio

App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994), citing *State v. Clay,* 34 Ohio St.2d 250, 298 N.E.2d 137 (1972). The credibility of the evidence was for the trial court to determine, because it heard the evidence directly. *State v. Olson*, 2d Dist. Montgomery No. 25452, 2013-Ohio-4403, ¶ 11, citing *State v. Myles,* 2d Dist. Montgomery No. 25297, 2013-Ohio-2227, ¶ 21.

{¶ 12} "Accepting the findings of fact of the trial court as true, we must independently determine as a matter of law, whether the facts meet the appropriate legal standard." *State v. Love at ¶ 19; see also*, S*tate v. Mobley,* 2d Dist. Montgomery No. 26044, 2014-Ohio-4410, ¶ 11; *State v. Shipp,* 2d Dist. Montgomery No. 24933, 2012-Ohio-6189, ¶ 11; *State v. Morgan,* 2d Dist. Montgomery No. 18985, 2002-Ohio-268.

**III. The officer must assume the constitutionality of the jaywalking ordinance.**

{¶ 13} . The court concluded that the officer did not have a legally sufficient basis to stop Millerton for jaywalking, because the jaywalking statute was unconstitutionally vague. The ordinance requires a pedestrian to travel "as near as practicable to the edge of the roadway," when no sidewalk or shoulder is available, without defining any specific distance. City of Dayton Code of Ordinances, Section 75.02(C).

{¶ 14} A police officer may stop and detain a suspect when the officer has a reasonable and articulable suspicion that the suspect has committed a criminal offense. *State v. Regulus*, 2013-Ohio-507, 986 N.E.2d 1105, ¶ 10 (2d Dist.), citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed 2d 889 (1968). A court determines the existence of reasonable suspicion by evaluating the "totality of the circumstances."   *State v. Love* at ¶ 18.

**{¶ 15}** To evaluate the totality of the circumstances, the court must consider the individualized facts "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Vineyard*, 2d Dist. Montgomery No. 25854, 2014-Ohio-3846, ¶ 21. The trial court identified factual support in the record, from the testimony of Officer Phillips, that based on his observation, he believed that Millerton had committed a jaywalking offense.

**{¶ 16}** When examining an officer's actions at the time of the stop, the court must make an objective assessment of the officer's actions, and not focus subjectively on the officer's actual state of mind. *Dayton v. Erickson*, 76 Ohio St.3d 3, 6, 665 N.E.2d 1091,1097 (1996). In making that objective assessment, the court must recognize that officers are required to assume the validity of the ordinances they are charged with enforcing, and therefore the potential unconstitutionality of the ordinance has no bearing on the reasonableness of an officer's initial decision at the time of the offense whether to detain a person who he believes has violated the law. *State v. Limoli*, 10th Dist. Franklin No. 11AP-924, 2012-Ohio-4502, ¶ 33, citing *Illinois v. Krull,* 480 U.S. 340, 349-50, 107 S.Ct. 1160, 94 L.E.2d 364 (1987); *State v. Ferry,* 11th Dist. Lake No. 2007-L-217, 2008-Ohio-2616, ¶ 23. The Supreme Court of the United States recently recognized that when an officer is suddenly confronted with a situation requiring the application of an unclear statute, the officer can still make a valid stop if the officer's mistaken interpretation of the law is reasonable. *Heien v. North Carolina*, __ U.S.__ , 135 S.Ct. 530, 2014 WL 7010684 (2014).

{¶ 17}  Whether there is a constitutional basis to conduct a pat down during a *Terry* stop is a question of law which we review on a de novo basis; however, our review is based on the trial court's findings of fact.   The constitutionality of the city ordinance is not a factor in determining whether the officer had a reasonable suspicion to stop Millerton based on his belief that Millerton had committed a criminal offense.   Rather, the question is whether there was a reasonable suspicion that Millerton was committing a criminal offense.   There is support in the record, from the testimony of the officer, that he believed Millerton had committed a criminal offense by walking within the roadway on Eastview Avenue.    These facts support a legal conclusion that the officer had an articulable suspicion that the criminal offense of jaywalking had occurred.

**IV.   The officer did not have a sufficient basis to conduct a pat down of Millerton during a Terry stop for jaywalking.**

{¶ 18}  Here, the court found that Millerton had been seized and subjected to a pat down solely because of the high rate of criminal activity in the area. The question is whether the evidence obtained from Millerton is tainted by an impermissible pat down.

{¶ 19}   "The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Not all interactions between citizens and the police, however, implicate the protections of the Fourth Amendment. *State v. Garrison*, 2d Dist. Montgomery No. 24857,    2012-Ohio-3846, ¶ 15.

{¶ 20} The law recognizes three types of police-citizen interactions: 1) a consensual encounter, 2) a brief investigatory stop or detention, and 3) an arrest. *State v. Jones,* 188 Ohio App. 3d 628, 2010-Ohio-2854, 936 N.E.2d 529, ¶ 13 (10th Dist.).

{¶ 21} During a consensual encounter, the officer and citizen can engage in conversation, and a person's voluntary statements may be used against him or her, as long as that the person knows that he or she is free to walk away and the police have not conveyed a message that compliance with their requests is required. *State v. Barton*, 2d Dist. Montgomery No. 21815, 2007-Ohio-2348, ¶ 14-15.

{¶ 22} Investigatory detention, often referred to as a *Terry* stop, allows an officer to briefly stop and temporarily detain individuals in order to investigate possible criminal activity. *State v. Strozier*, 172 Ohio App. 3d 780, 2007-Ohio-4575, 876 N.E.2d 1304 (2d Dist.), citing *Terry v. Ohio.* An investigatory stop does not constitute an arrest or place the suspect in custody. *State v. Jones* at ¶ 16. It is well established that "[a]n individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or is compelled to respond to questions." *State v. Love*, 2d Dist. Montgomery No. 23902, 2011-Ohio-1287, ¶ 18, quoting *In re D. W.,* 184 Ohio App.3d 627, 2009-Ohio-5406, 921 N.E.2d 1114, ¶ 13-15 (2d Dist.).

{¶ 23} During a brief investigatory stop, without placing the suspect in custody or under arrest, an officer is entitled to ask questions to confirm his suspicions that criminal activity occurred. During a *Terry* stop, an officer can ask for identification or sufficient information to write a citation or to run a background check for outstanding warrants, often

called a "field investigation". *State v. Wortham*, 145 Ohio App. 3d 126, 761 N.E. 2d 1151 (2d Dist. 2001). *See also*, *State v. Harrison*, 2d Dist. Montgomery No. 25128, 2013-Ohio-1235.

**{¶ 24}** Also, during a *Terry* stop, it is sometimes considered reasonable for the investigating officer to conduct a "protective search" by patting down the suspect to discover and remove weapons. *State v. Robinette*, 80 Ohio St.3d 234, 685 N.E.2d 762 (1997); *State v. Andrews*, 57 Ohio St.3d 86, 89, 565 N.E.2d 1271, 1274 (1991). The primary purpose of a protective search and seizure is to assure public and officer safety. "Pursuant to *Terry*, police officers are allowed to perform limited protective searches for concealed weapons when the surrounding circumstances create a suspicion that an individual may be armed and dangerous." *State v. Harding,* 180 Ohio App. 3d 497, 2009-Ohio-59, 905 N.E.2d 1289 (2d Dist.), overruled on other grounds, *State v. Gardner*, 2d Dist. Montgomery No. 24308, 2011-Ohio-5692.

**{¶ 25}** "The authority to stop an individual does not necessarily equate to authority to search the individual." (Citations omitted.) *State v. Lovins*, 2d Dist. Montgomery No. 23530, 2010-Ohio-3916, ¶ 12. *See also*, *State v. Stewart,* 2d Dist. Montgomery No. 19961, 2004-Ohio-1319, ¶ 16; *State v. Byrd*, 2d Dist. Montgomery No. 2659, 2012-Ohio-2659. Once a lawful stop has been made, the police may conduct a limited protective search for concealed weapons if the officer reasonably believes that the suspect may be armed or a danger to the officer or to others. *State v. Evans*, 67 Ohio St.3d 405, 618 N.E.2d 162 (1993); *State v. Molette,* 2d Dist. Montgomery No. 19694, 2003-Ohio-5965, ¶ 13.

**{¶ 26}** "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence * * *." *Evans,* 67 Ohio St.3d at 408, quoting *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *see also, State v. Olden*, 2d Dist. Montgomery No. 23137, 2010-Ohio-215, ¶ 25. In other words, "the protective pat down under Terry is limited in scope to its protective purpose and cannot be employed by the searching officer to search for evidence of crime." *State v. Holley,* 2d Dist. Montgomery No. 20371, 2004-Ohio-4264,¶ 10.

**{¶ 27}** "The frisk, or protective search, approved in *Terry* is limited in scope to a pat-down search for concealed weapons when the officer has a reasonable suspicion that the individual whose behavior he is investigating at close range may be armed and dangerous. While probable cause is not required, the standard to perform a protective search, like the standard for an investigatory stop, is an objective one based on the totality of the circumstances. The rationale behind the protective search is to allow the officer to take reasonable precautions for his own safety in order to pursue his investigation without fear of violence." *State v. Andrews*, 57 Ohio St.3d 86, 89, 565 N.E.2d 1271, 1274 (1991).

**{¶ 28}** In a recent case, also involving a stop for jaywalking, the Tenth District Court of Appeals affirmed the denial of a motion to suppress when the officers stopped the defendant for jaywalking, but also had a reasonable suspicion that the defendant may be armed. *State v. Moorer*, 10th Dist. Franklin No. 14AP-224, 2014-Ohio-4776. The court stated, "[A] determination that the articulable facts justify the initial detention of appellant under *Terry* does not end the inquiry. Indeed, '[t]he typical Terry stop entails a brief detention sufficient for the police to ask questions pertaining to the suspicious

circumstances.' However, an officer does not have authority to automatically conduct a search of a detainee when a valid stop has been initiated. In order to conduct a pat-down search for weapons, an officer must have reason to believe that an individual is armed and dangerous." (Citations omitted.) *Id.* at ¶ 21.

{¶ 29} In *State v. Lovins*, 2d Dist. Montgomery No. 23530, 2010-Ohio-3916, we affirmed the trial court's denial of a motion to suppress because the officer had a reasonable basis to suspect that Lovins was armed. The officer stopped Lovins for jaywalking after he observed Lovins run into the middle of the street, with his hands in his pocket and almost get hit by traffic. When the officer asked Lovins three times to remove his hands from his pockets, and he refused, the officer asked if he had any weapons and he answered "no". The officer then conducted a pat down search and found drugs. *Id.* at ¶ 22.

{¶ 30} Several cases do support the granting of a motion to suppress under particular circumstances where the police had no basis for a protective search. In *State v. Byrd*, 2d Dist. Montgomery No. 24583, 2012-Ohio-2659, we reversed the trial court's denial of a motion to suppress on the basis that there was no factual support in the record to conclude that the defendant was armed or dangerous, so the officer did not have a reasonable concern for his safety to conduct a pat down. We held that, "*Terry* requires a particularized suspicion developed by the officer with respect to each individual suspect *** [and this officer had an] insufficient basis to believe that this particular defendant at this particular time and location was armed and dangerous." *Id.* at ¶ 12-13.

{¶ 31} Similarly, we affirmed the granting of a motion to suppress in *State v. Habel*, 190 Ohio App.3d 393, 2010-Ohio-3907, 942 N.E.3d 389 (2d Dist.), where the

defendant was stopped for a minor misdemeanor for riding a bicycle on a sidewalk. Because the defendant could not provide identification, the officer frisked her before placing her in the back of the cruiser, and the frisk resulted in the seizure of contraband.  We found that while the officer could briefly detain her for the misdemeanor, such authority did not include the right to conduct a pat down when there was no suspicion of any other criminal conduct, the defendant was cooperative and presented no risk to safety, and there were no signs to suspect that she had weapons.  *Id.* at ¶ 25.

{¶ 32}  We held that mere presence in a high-crime or high-drug area, by itself, is insufficient to justify the stop and frisk of a person, especially when the officer indicated that the offender did nothing to make the officer worry that the offender would harm him. *Habel* at ¶ 24, citing *State v. Roberts*,  2d Dist. Montgomery No. 23219,  2010-Ohio-300, ¶ 18; *State v. Carter*, 69 Ohio St.3d 57, 65, 630 N.E.2d 355 (1994).  We have repeatedly held that, "[a] suspect's location in a high crime area alone will not justify a weapons frisk." *State v. Taylor*, 2d Dist. Montgomery No. 25169, 2013-Ohio-814, ¶ 22; *State v. Regulus*, 2d Dist. Montgomery No. 25177, 2013-Ohio-507, 986 N.E.2d 1105, ¶ 17.

{¶ 33}  The facts, as found by the trial court, do not support a reasonable articulable suspicion that Millerton was armed and dangerous that would justify the necessity for a weapons check for public or officer safety. The answers to any questions asked during the pat down for weapons and the property seized were therefore tainted by the impermissible search and the trial court did not err in granting the motion to suppress.

{¶ 34}  The assignment of error is overruled.

{¶ 35}  The judgment of the trial court will be affirmed.

. . . . . . . . . .

DONOVAN, J., concurs.

WELBAUM, J., dissenting:

{¶ 36} I very respectfully dissent from the majority opinion.

{¶ 37} The trial court concluded that Officer Phillips seized Millerton and that Millerton was not free to leave at the time that Phillips ordered him to stop. Order Granting Motion to Suppress, Doc.# 26, p. 2 and fn. 5. The trial court, therefore, granted the motion to suppress because Millerton was in custody and had not received *Miranda* warnings before a patdown occurred. *Id.* In my opinion, the testimony does not support the trial court's conclusions. The court's decision was also incorrect as a matter of law.

{¶ 38} According to the testimony of Officer Phillips, the street where Millerton was walking contained no edge lines or sidewalks. However, Millerton was walking five to eight feet into the middle of the road when he was stopped for jaywalking. The police had also received complaints about jaywalking in this high-crime area, and had made several weapons arrests in recent weeks. Because of the nature of the high-crime area and the fact that Millerton did not immediately stop when asked to do so, Officer Phillips planned to place Millerton in the back seat of his cruiser so that he could issue a jaywalking citation.

{¶ 39} However, Phillips was not certain that Millerton heard the request to stop, and Millerton testified that he did not hear Phillips say anything to him. Specifically, Millerton stated that "I don't recall hearing him saying [sic] nothing. * * * I'm not saying that he didn't. But I don't remember hearing that but the point is he got out of his car and grabbed my arm." Transcript of Suppression Hearing, p. 33.

**{¶ 40}** Phillips testified that when he exited the cruiser and approached Millerton, he asked Millerton if he had any weapons, and Millerton stated that he had a knife in his back pocket. Phillips then began to check Millerton's back pocket. As Phillips did so, he asked Millerton if he had any other weapons, and Millerton responded that he had a gun in his front pocket. As a result, Phillips immediately handcuffed Millerton and retrieved the weapon from his pocket.

**{¶ 41}** The trial court did not indicate that Phillips' testimony lacked credibility, nor did the court state that it found Millerton's testimony credible. Instead, the trial court concluded that the patdown occurred before Millerton made the statement about having a knife. As was indicated, this was not the testimony.

**{¶ 42}** We have previously noted that:

"Contact between police officers and the public can be characterized in different ways. The first manner of contact and the least restrictive is contact that is initiated by a police officer for purposes of inquiry only. '[M]erely approaching an individual on the street or in another public place[,]' asking questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. *United States v. Flowers* (C.A.6, 1990), 909 F.2d 145, 147. The United States Supreme Court has repeatedly held that mere police questioning does not constitute a seizure for Fourth Amendment purposes. *Florida v. Bostick* (1991), 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389; *INS v. Delgado* (1984), 466 U.S. 210, 212, 104 S.Ct. 1758, 80 L.Ed.2d 247. '[E]ven when officers have no basis for suspecting a particular

individual, they may generally ask questions of that individual; ask to examine the individual's identification; * * *, provided they do not convey a message that compliance with their request is required.' *Bostick*, 501 U.S. at 434-35 [111 S.Ct. 2382, 115 L.Ed.2d 389] (citations omitted). A person approached in this fashion need not answer any questions, and may continue on his or her way unfettered by any real or implied restraint, and he may not be detained even momentarily for his refusal to listen or answer. *Id*." *State v. Aufrance*, Montgomery App. No. 21870, 2007-Ohio-2415, ¶ 12. Thus, an individual's Fourth Amendment rights are not implicated during a consensual encounter initiated by the police. *Id*.

*State v. Harding*, 180 Ohio App.3d 497, 2009-Ohio-59, 905 N.E.2d 1289, ¶ 13 (2d Dist.), *overruled on other grounds*, *State v. Gardner*, 2d Dist. Montgomery No. 24308, 2011-Ohio-5692, ¶ 12-40.

{¶ 43} Even if Officer Phillips had ordered Millerton to stop, Millerton, by his own admission, did not hear Phillips' remark. Thus, at that point, the encounter was still consensual. When Millerton then stated, in response to Phillips' inquiry, that he had a knife, Phillips was justified in conducting a "limited protective search for concealed weapons." *Harding* at ¶ 14, citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

{¶ 44} Furthermore, even if Millerton had heard Phillips tell him to stop, Phillips was entitled to stop Millerton for purposes of writing a citation for jaywalking. "Where an officer witnesses conduct which the officer reasonably believes constitutes a violation of

law, the officer has probable cause to arrest or cite the persons involved for the violation. Having probable cause, the officer is authorized by law to detain those persons for that purpose, and the detention is constitutionally reasonable for purposes of the Fourth Amendment." *State v. Waller*, 2d Dist. Montgomery No. 16101, 1997 WL 451425, * 2 (June 27, 1997), citing *United States v. Ferguson,* 8 F.3d 385 (6th Cir.1993).

**{¶ 45}** As in the case before us, *Waller* involved a jaywalking citation. We held in that case that the officer had a reasonable belief that the defendant had violated the jaywalking ordinance, and, thus, had probable cause to stop the defendant. *Id.* at * 3.

**{¶ 46}** When Officer Phillips observed Millerton jaywalking, he had probable cause to stop him for that offense and to briefly detain him. Once Phillips justifiably detained Millerton, he was entitled to ask Millerton if he had weapons. *See, e.g.*, *Waller* at *4 (concluding that once an officer had probable cause to stop the defendant for jaywalking, the officer was also justified in asking the defendant to open both his hands and show them to the officer, for purposes of officer safety). Once Millerton replied that he had weapons, Phillips had probable cause to search Millerton.

**{¶ 47}** Accordingly, because the police had probable cause both to stop and to search the defendant, I very respectfully dissent.

. . . . . . . . . .

Copies mailed to:

Kirsten A. Brandt
Charles L. Grove
Hon. Steven K. Dankof