**[Cite as *State v. Kinnison*, 2016-Ohio-3481.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**DARKE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NOS. 2015-CA-2 |
| | : | 2015-CA-8 |
| v. | : | |
| | : | T.C. NO. 14CR146 |
| HERMAN E. KINNISON | : | |
| | : | (Criminal appeal from |
| Defendant-Appellant | : | Common Pleas Court) |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___17th___ day of ____June____, 2016.

. . . . . . . . . .

R. KELLY ORMSBY, III, Atty, Reg. No. 0020615, Prosecuting Attorney and DEBORAH
S. QUIGLEY, Atty. Reg. No. 0055455, Assistant Prosecuting Attorney, Courthouse, 504
S. Broadway Street, Greenville, Ohio 45331
        Attorneys for Plaintiff-Appellee

JOSHUA M. KIN, Atty. Reg. No. 0086965, 2700 Kettering Tower, Dayton, Ohio 45423
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} Defendant-appellant Herman E. Kinnison appeals his conviction and

sentence for one count of possession of heroin, in violation of R.C. 2925.11(A)(C)(6)(b),

a felony of the fourth degree.   Specifically, Kinnison appeals the trial court's denial of his

motion to suppress the heroin caps which were found in his possession during a warrantless search of his person by Sergeant Tony Royer from the Darke County Sheriff's Office (DCSO). Kinnison filed a timely notice of appeal with this Court on January 27, 2015.

{¶ 2} The incident which forms the basis for the instant appeal occurred on June 29, 2014, when the DCSO received a 911 call regarding a white U-Haul pickup truck being driven in an unsafe manner on State Route 49. The 911 caller further reported that the truck was traveling northbound and had stopped at the intersection of Pitsburg-Laura Road. The caller stated that he observed a female exit the truck at the intersection.

{¶ 3} Armed with this information, Sgt. Royer was dispatched to locate the truck. Shortly thereafter, Sgt. Royer found the truck which was unoccupied and parked in front of a Pak-A-Sak convenience store located off of St. Rt. 49. Sgt. Royer described the Pak-A-Sak as a small gas station with a Subway sandwich shop attached to it. Sgt. Royer entered the convenience store and observed Kinnison standing in line to purchase a Subway sandwich. Sgt. Royer testified that he immediately recognized Kinnison, as the two men knew each other from previous interactions. In addition to Kinnison, Sgt. Royer also observed that there were two or three attendants in the gas station, as well as a female, later identified as Tiffany Garner.

{¶ 4} Sgt. Royer approached Kinnison and asked him if he was the individual driving the truck. Kinnison acknowledged that he was driving the truck, and Sgt. Royer asked him to step outside the store so they could speak. Kinnison acquiesced to Sgt. Royer's request, and the two men stepped outside into the parking lot. Sgt. Royer

testified that at this point, he noticed that Kinnison "didn't appear to be acting normal." Sgt. Royer testified that Kinnison's speech was "sluggish," and his motor skills were slow. Kinnison informed Sgt. Royer that he had been released from the hospital earlier that same day and was taking medications. Kinnison further stated that he was not feeling well, so he stopped at the convenience store with his companion, Garner, for something to eat. Garner approached Sgt. Royer and Kinnison while they spoke outside.

{¶ 5} Sgt. Royer observed track marks on Garner's arm that he believed to be consistent with heroin use. Upon inquiry by Sgt. Royer, Garner stated that she had injected heroin on the previous day. DCSO Deputy Hanes arrived at the scene to help Sgt. Royer and directed Garner to another part of the parking lot to speak with her. Kinnison told Sgt. Royer that he and Garner had been visiting a friend who lives in Dayton, Ohio, after they left the hospital.

{¶ 6} After Garner had been led away, Sgt. Royer asked Kinnison if there were any weapons or drugs in the pickup truck. Kinnison informed Sgt. Royer that he had prescription medications from his hospital visit on his person and in the truck. At that point, Sgt. Royer asked/directed Kinnison to empty his pockets. Regarding his interaction with Kinnison, Sgt. Royer provided the following testimony:

> Defense Counsel: Can you tell me, to the best of your knowledge, what you said to Mr. Kinnison to cause him to do that?
>
> Sgt. Royer: Excuse me. What I would typically ask [a] defendant or a suspect is, "Do you have a problem emptying your pockets? *Show me what's in your pockets.*" (Emphasis added)
>
> Q: Did you do that under the color of authority as a Sheriff's deputy?

A: Absolutely.

{¶ 7} Thereafter, Kinnison began removing items from his front and rear pant pockets. While he was taking things out of his pockets, a clear plastic baggie fell to the ground which was later found to contain twenty-two clear jell capsules, each filled with a small amount of heroin. When Sgt. Royer inquired as to the contents of the baggie, Kinnison stated that it was heroin, but it was not his. At that point, Sgt. Royer placed Kinnison under arrest for possession of heroin and transported him to jail.

{¶ 8} Kinnison was indicted on July 25, 2014, for possession of heroin. At his arraignment August 4, 2014, Kinnison pled not guilty to the charged offense. On August 14, 2014, Kinnison was released on an own recognizance bond (OR). On August 20, 2014, Kinnison filed a motion to suppress in which he sought to have the heroin excluded from evidence. A hearing was held on said motion on September 29, 2014, during which only Sgt. Royer and Kinnison testified.

{¶ 9} During his cross-examination, Sgt. Royer testified that he was unable to corroborate the report from the 911 caller because he never personally observed Kinnison operating the pickup truck. Sgt. Royer testified that he did not observe Kinnison engaged in any criminal activity after making contact with him at the convenience store. Sgt. Royer further testified that he did not have a reasonable articulable suspicion that a crime had been committed when he asked Kinnison to step outside and speak to him. Nevertheless, Sgt. Royer testified that he believed that he was conducting a *Terry* stop when he asked Kinnison to come outside and talk because he had admitted to driving the truck. Moreover, because of Kinnison's slow and lethargic demeanor, Sgt. Royer suspected a potential OVI.

{¶ 10} Sgt. Royer testified that once they were outside, Kinnison explained that he had been released from the hospital earlier that day and was taking several prescription medications. Sgt. Royer testified that Kinnison's explanation for his lethargic behavior was reasonable under the circumstances. Additionally, Sgt. Royer testified that he did not observe any criminal behavior on Kinnison's part after they came outside. Sgt. Royer testified that he did not observe anything that would give him reason to believe that Kinnison had been using heroin. When he was asked if Kinnison had done anything to make him fear for his personal safety, Sgt. Royer stated, "[a]t that particular time, you never know. You never know. *** As law enforcement officers, we're in danger with everyone." Sgt. Royer went on to testify that Kinnison did not act aggressively or make any suspicious movements, and he did not feel the need to perform a *Terry* pat-down of the defendant.

{¶ 11} Sgt. Royer did not have a warrant to search Kinnison's pockets. When asked whether he believed that exigent circumstances existed that would negate the need for a warrant, Sgt. Royer testified that he suspected that Kinnison may have had illegal narcotics in his possession. Sgt. Royer testified that this belief was based on Kinnison's lethargic affect and his admission in regards to taking prescription medications that day. Significantly, Sgt. Royer testified that prior to asking/directing Kinnison to empty his pockets, he had no basis to arrest him and conduct a search incident to an arrest. We also note that Sgt. Royer testified that although Kinnison was *not* placed in custody prior to being ordered to empty his pockets, he was not free to leave and was, in fact, being detained due to his lethargic behavior. The State, however, conceded in its rebuttal argument that the encounter initiated by Sgt. Royer became a *Terry* stop when Kinnison

acknowledged having taken prescription medications that day.

{¶ 12} Sgt. Royer also testified that Kinnison was detained upon the discovery that his driver's license was under suspension. Sgt. Royer, however, was unable to recall whether he learned of the suspended license before or after he asked/directed Kinnison to empty his pockets. For his part, Kinnison testified that once he admitted that he had recently taken prescription medications, he felt that he was not free to leave and that he had no choice but to empty his pockets upon Sgt. Royer's request.

{¶ 13} The trial court issued its decision overruling Kinnison's motion to suppress on October 29, 2014. Therein, the trial court found that Sgt. Royer's decision to speak with Kinnison inside the convenience store and subsequent request for him to come outside to continue talking was merely a "general investigative inquiry" or consensual encounter that did not constitute a seizure under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L .Ed.2d 889 (1968). Rather, the trial court found that once Kinnison "admitted his health condition and medications caused him to not act appropriately[,]" the encounter became a stop subject to the limitations of *Terry*. Therefore, the trial court found that pursuant to *Terry*, Sgt. Royer's request for Kinnison to empty his pockets was reasonable, and he had no option but to comply. The trial court stated the following:

Pursuant to *Terry*, an investigator with articulable suspicion can further detain an individual for the purpose of seeking additional information (which admittedly involved a search of the Defendant in this cases [sic]). The additional investigation included the request that the Defendant empty his pockets. *Terry* stops are generally understood to account for weapons and to provide for officer safety. With so many items being capable of

inflicting harm, including small items such as pen knives, needles and razor blades, case authority reviewed by the court disclosed no circumstances where the request to empty pockets was an unreasonable *Terry* request. Here, the Court finds that the request to the Defendant to empty his pockets was a reasonable search based on *Terry* principles; the search was not over-broad nor too time consuming.

**{¶ 14}** Shortly thereafter on November 3, 2014, Kinnison pled no contest to one count of possession of heroin. The trial court found him guilty and sentenced him to community control sanctions that included six months of local incarceration.

**{¶ 15}** It is from this judgment that Kinnison now appeals.

**{¶ 16}** Kinnison's sole assignment of error is as follows:

**{¶ 17}** "THE TRIAL COURT ERRED BY OVERRULING MR. KINNISON'S MOTION TO SUPPRESS EVIDENCE."

**{¶ 18}** In his sole assignment, Kinnison contends that the trial court erred when it overruled his motion to suppress. Specifically, Kinnison argues that Sgt. Royer's request for him to empty his pockets exceeded the limits of a reasonable pat-down search pursuant to *Terry*. Kinnison also argues that Sgt. Royer had no reasonable articulable suspicion that he was armed and/or dangerous to warrant a *Terry* pat-down search.[1]

**{¶ 19}** "Appellate review of a motion to suppress presents a mixed question of law

---

[1] We note that Kinnison's appointed counsel filed an appellate brief on September 17, 2015. However, on November 16, 2015, appointed counsel requested to withdraw from the case because he had accepted new employment at the Greene County Prosecutor's Office. Thereafter, new appellate counsel was appointed to represent Kinnison in the instant appeal. On March 2, 2016, new appointed counsel filed a supplemental brief on Kinnison's behalf. The State filed a supplemental responsive brief on April 12, 2016. Kinnison's appeal is now properly before us.

and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.   See also State v. Carter,* 72 Ohio St.3d 545, 552, 651 N.E.2d 965 (1995).   When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8, citing *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982).   With respect to the trial court's conclusions of law, however, our standard of review is de novo; therefore, we must decide whether the facts satisfy the applicable legal standard. *Id.,* citing *State v. McNamara,* 124 Ohio App.3d 706, 710, 707 N.E.2d 539 (4th Dist.1997).

**{¶ 20}** "The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures." *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).   Not all interactions between citizens and the police, however, implicate the protections of the Fourth Amendment. *State v. Garrison,* 2d Dist. Montgomery No. 24857, 2012-Ohio-3846, ¶ 15.

**{¶ 21}** The law recognizes three types of police-citizen interactions: 1) a consensual encounter, 2) a brief investigatory stop or detention, and 3) an arrest. *State v. Jones,* 188 Ohio App.3d 628, 2010-Ohio-2854, 936 N.E.2d 529, ¶ 13 (10th Dist.).

**{¶ 22}** During a consensual encounter, the officer and citizen can engage in conversation, and a person's voluntary statements may be used against him or her, as long as that the person knows that he or she is free to walk away and the police have not conveyed a message that compliance with their requests is required. *State v. Barton,* 2d Dist. Montgomery No. 21815, 2007-Ohio-2348, ¶ 14–15.

{¶ 23} Investigatory detention, often referred to as a *Terry* stop, allows an officer to briefly stop and temporarily detain individuals in order to investigate possible criminal activity. *State v. Strozier,* 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304 (2d Dist.), citing *Terry v. Ohio.* An investigatory stop does not constitute an arrest or place the suspect in custody. *State v. Jones* at ¶ 16. It is well established that "[a]n individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or is compelled to respond to questions." *State v. Love,* 2d Dist. Montgomery No. 23902, 2011-Ohio-1287, ¶ 18, quoting *In re D.W.,* 184 Ohio App.3d 627, 2009-Ohio-5406, 921 N.E.2d 1114, ¶ 13–15 (2d Dist.).

{¶ 24} During a brief investigatory stop, without placing the suspect in custody or under arrest, an officer is entitled to ask questions to confirm his suspicions that criminal activity occurred. During a *Terry* stop, an officer can ask for identification or sufficient information to write a citation or to run a background check for outstanding warrants, often called a "field investigation". *State v. Wortham,* 145 Ohio App.3d 126, 761 N.E.2d 1151 (2d Dist.2001). *See also, State v. Harrison,* 2d Dist. Montgomery No. 25128, 2013-Ohio-1235.

{¶ 25} Also, during a *Terry* stop, it is sometimes considered reasonable for the investigating officer to conduct a "protective search" by patting down the suspect to discover and remove weapons. *State v. Robinette,* 80 Ohio St.3d 234, 685 N.E.2d 762 (1997); *State v. Andrews,* 57 Ohio St.3d 86, 89, 565 N.E.2d 1271 (1991). The primary purpose of a protective search and seizure is to assure public and officer safety. "Pursuant to *Terry,* police officers are allowed to perform limited protective searches for

concealed weapons when the surrounding circumstances create a suspicion that an individual may be armed and dangerous." *State v. Harding,* 180 Ohio App.3d 497, 2009-Ohio-59, 905 N.E.2d 1289 (2d Dist.), *overruled on other grounds, State v. Gardner,* 2d Dist. Montgomery No. 24308, 2011-Ohio-5692.

{¶ 26} "The authority to stop an individual does not necessarily equate to authority to search the individual." *State v. Lovins,* 2d Dist. Montgomery No. 23530, 2010-Ohio-3916, ¶ 12. *See also State v. Byrd,* 2d Dist. Montgomery No. 24583, 2012-Ohio-2659. Once a lawful stop has been made, the police may conduct a limited protective search for concealed weapons *if the officer reasonably believes that the suspect may be armed or a danger to the officer or to others. State v. Evans,* 67 Ohio St.3d 405, 618 N.E.2d 162 (1993); *State v. Molette,* 2d Dist. Montgomery No. 19694, 2003-Ohio-5965, ¶ 13.

{¶ 27} "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence * * *." *Evans,* 67 Ohio St.3d at 408, 618 N.E.2d 162, quoting *Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *see also State v. Olden,* 2d Dist. Montgomery No. 23137, 2010-Ohio-215, ¶ 25. In other words, "the protective pat down under *Terry* is limited in scope to its protective purpose and cannot be employed by the searching officer to search for evidence of crime." *State v. Holley,* 2d Dist. Montgomery No. 20371, 2004-Ohio-4264, ¶ 10.

{¶ 28} "The frisk, or protective search, approved in *Terry* is limited in scope to a pat-down search for concealed weapons when the officer has a reasonable suspicion that the individual whose behavior he is investigating at close range may be armed and dangerous. While probable cause is not required, the standard to perform a protective

search, like the standard for an investigatory stop, is an objective one based on the totality of the circumstances. The rationale behind the protective search is to allow the officer to take reasonable precautions for his own safety in order to pursue his investigation without fear of violence." *State v. Millerton*, 2015-Ohio-34, 26 N.E.3d 317, ¶ 27 (2d Dist.), quoting *State v. Andrews,* 57 Ohio St.3d 86, 89, 565 N.E.2d 1271 (1991).

{¶ 29} In the instant case, we note that the initial encounter between Sgt. Royer and Kinnison was consensual in nature. The record establishes that Sgt. Royer was dispatched to investigate an anonymous tip regarding an erratic driver in a pickup truck on St. Rt. 49. Sgt. Royer located the unoccupied pickup truck identified in the tip in the parking lot of a convenience store just off St. Rt. 49. Upon entering the store, Sgt. Royer observed Kinnison, whom he recognized from previous interactions. Sgt. Royer engaged Kinnison in conversation. Kinnison acknowledged that he was driving the truck, and Sgt. Royer asked him to step outside the store so they could speak. Kinnison acquiesced to Sgt. Royer's request, and the two men stepped outside into the parking lot. Sgt. Royer testified that at this point, he noticed that Kinnison "didn't appear to be acting normal." Sgt. Royer testified that Kinnison's speech was "sluggish," and his motor skills were slow. Kinnison informed Sgt. Royer that he been released from the hospital earlier that same day and was taking medications. We agree with the trial court that at this point in the conversation between Sgt. Royer and Kinnison, the encounter ceased to be consensual and became an investigatory detention. Sgt. Royer testified that Kinnison was not free to leave at that point. Significantly, Kinnison testified that he felt that he was not free to leave in light of Sgt. Royer's actions.

{¶ 30} The trial court, in its decision denying Kinnison's motion to suppress,

determined that the heroin at issue was recovered during the course of a lawful *Terry* pat-down search. As set forth above, the primary purpose of *Terry* is to permit a frisk of a suspect believed to be armed. Further, a *Terry* search is limited in nature and is designed primarily to facilitate officer safety. "The frisk described by the *Terry* Court, * * * is a limited search for weapons, requiring that the intrusion be limited to a pat-down of the suspect's outer clothing. A police officer may not order a suspect to empty his pockets instead of a pat-down." *Ohio Arrest, Search and Seizure,* § 16.1, Lewis R. Katz., 2013 Edition, citing *State v. Todd,* 2d Dist. Montgomery No. 23921, 2011–Ohio–1740.

{¶ 31} In the instant case, Sgt. Royer specifically testified that that he did not observe any criminal behavior on Kinnison's part after they came outside. Sgt. Royer testified that he did not observe anything that would give him reason to believe that Kinnison had been using heroin. When he was asked if Kinnison had done anything to make him fear for his personal safety, Sgt. Royer stated, "[a]t that particular time, you never know. You never know. *** As law enforcement officers, we're in danger with everyone." Sgt. Royer went on to testify that Kinnison did not act aggressively or make any suspicious movements, and he did not feel the need to perform a *Terry* pat-down of the defendant. Sgt. Royer testified that the only reason he asked/directed Kinnison to empty his pockets was because he suspected the presence of illegal narcotics.

{¶ 32} In *State v. Byrd,* 2d Dist. Montgomery No. 24583, 2012-Ohio-2659, we reversed the trial court's denial of a motion to suppress on the basis that there was no factual support in the record to conclude that the defendant was armed or dangerous, so the officer did not have a reasonable concern for his safety to conduct a pat down. We held that, "*Terry* requires a particularized suspicion developed by the officer with respect

to each individual suspect * * * [and this officer had an] insufficient basis to believe that this particular defendant at this particular time and location was armed and dangerous." *Id.* at ¶ 12-13.

**{¶ 33}** Therefore, we conclude that the facts, as found by the trial court, do not support a reasonable articulable suspicion that Kinnison was armed and dangerous that would justify the necessity for a weapons check for public or officer safety. Moreover, since Sgt. Royer was admittedly not concerned for his safety and was only interested in finding illegal narcotics, his request for Kinnison to empty his pockets was clearly an unlawful intrusion under the Fourth Amendment. *State v. Todd*, at ¶ 33. In *Todd*, the State did not dispute that the officer's order that the defendant empty his pockets exceeded the scope of a limited pat-down for weapons. *Id.* We found, however, that the lawfulness of the search and subsequent seizure turned on whether there was a constitutional search incident to an arrest. *Id.*

**{¶ 34}** Here, Kinnison was not under arrest when Sgt. Royer directed him to empty his pockets. More importantly, Sgt. Royer did not tell Kinnison to empty his pockets out of concern for his (Royer's) safety. This was not a protective search under *Terry*. Rather, Sgt. Royer's only stated concern was finding illegal narcotics. Accordingly, we disagree with the trial court's determination and conclude that the search of Kinnison's person in this case exceeded the scope of a limited pat-down search for weapons under *Terry*. As such, the discovery of the contraband at issue cannot be justified under a *Terry* stop and frisk analysis. We therefore conclude that the trial court erred when it overruled Kinnison's motion to suppress.

**{¶ 35}** Kinnison's sole assignment of error is sustained.

{¶ 36} Kinnison's sole assignment of error having been sustained, the judgment of the trial court is reversed, and this matter is remanded for proceedings consistent with this opinion.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

R. Kelly Ormsby, III
Deborah S. Quigley
Joshua M. Kin
Hon. Jonathan P. Hein