The STATE of Ohio, Appellant,

v.

HABEL, Appellee.

[Cite as *State v. Habel*, 190 Ohio App.3d 393, 2010-Ohio-3907.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23922.

Decided Aug. 20, 2010.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Michele D. Phipps, Assistant Prosecuting Attorney, for appellant.

Carl Goraleski, for appellee.

VUKOVICH, Judge

{¶ 1} Appellant, the state of Ohio, appeals the Montgomery County Common Pleas Court's decision to grant appellee's, Amy Habel's, motion to suppress. The state contends that the trial court's decision to suppress the heroin was in error because the patdown and placement in the cruiser were justified. Habel, on the other hand, asserts that the trial court's decision was correct because the patdown violated the Fourth Amendment to the United States Constitution's prohibition against unreasonable searches and seizures. Because none of the established justifications for a search are applicable to the facts of this case, we affirm the trial court's suppression ruling.

## STATEMENT OF FACTS AND CASE

{¶ 2} On May 10, 2009, Habel was stopped in Dayton, Ohio, by Officer Jason Rhodes and his partner for riding her bicycle on a sidewalk, which by Dayton City Ordinance is a minor misdemeanor. Intending to issue a citation for the minor misdemeanor, Officer Rhodes asked Habel for proper identification. Since she was unable to produce any form of identification, she was frisked and placed in the back seat of the cruiser so that the information she provided to the officer could be run through the computer to check for any discrepancies. During the frisk, one gel capsule containing heroin was found on Habel's person. As a

result, Habel was arrested for possession of illegal drugs and read her Miranda rights, which she waived, and made a statement to the officer.

{¶ 3} On June 17, 2009, Habel was indicted on one count of possession of heroin in violation of R.C. 2925.11(A). Following her not-guilty plea, Habel filed a motion to suppress. Following an evidentiary hearing and postmotion briefs, the trial court sustained the suppression motion. The state timely appeals that decision.

## ASSIGNMENT OF ERROR

{¶ 4} "The trial court improperly sustained Habel's motion to suppress."

{¶ 5} The roles of trial and appellate courts in reviewing motions to suppress are well established. In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford* (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498. Accordingly, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." Id.

{¶ 6} The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Under *Terry*, police officers may briefly stop and/or temporarily detain persons in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. *State v. Martin*, Montgomery App. No. 20270, 2004-Ohio-2738, 2004 WL 1178737, ¶ 10, citing *Terry*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. A police officer may lawfully stop a vehicle, motorized or otherwise, if he has a reasonable articulable suspicion that the operator has engaged in criminal activity, including a minor traffic violation. See *State v. Buckner*, Montgomery App. No. 21892, 2007-Ohio-4329, 2007 WL 2405721, ¶ 8.

{¶ 7} Here, the officer stopped Habel for a minor misdemeanor, riding her bike on the sidewalk. Thus, the officer was permitted to stop Habel. However, the authority to stop a person does not necessarily equate to authority to frisk the person for weapons. *State v. Roberts*, Montgomery App. No. 23219, 2010-Ohio-300, 2010 WL 334913, ¶ 16, quoting *State v. Stewart*, Montgomery App. No. 19961, 2004-Ohio-1319, 2004 WL 541162, ¶ 16. See also *State v. Evans* (1993), 67 Ohio St.3d 405, 409, 618 N.E.2d 162 (stating that a *Mimms* order does not

automatically bestow upon the police officer the authority to conduct a patdown search for weapons).

{¶ 8} Both parties contend that the Ohio Supreme Court's decisions in *Evans*, 67 Ohio St.3d 405, 618 N.E.2d 162, and *State v. Lozada* (2001), 92 Ohio St.3d 74, 748 N.E.2d 520, support their positions regarding the reasonableness of the search and placement in the cruiser.

{¶ 9} In *Evans*, the driver was stopped because of a burnt-out headlight. When asked for a driver's license, the driver was unable to produce it. Pursuant to R.C. 4507.35, the failure to produce a driver's license is a first-degree misdemeanor, an arrestable offense. Before being placed in the cruiser, Evans was patted down. The frisk produced money and crack cocaine.

{¶ 10} The court determined that the patdown was not unreasonable under the Fourth Amendment. It noted that patting the driver down before placing the driver in the back seat of a squad car is a protective measure. It then added:

{¶ 11} "We, therefore, find that the police officers' proffered justification in patting down the driver—their own personal security—is legitimate. When balanced against the driver's minimal privacy interests under these circum-stances, we can only conclude that the driver of a motor vehicle may be subjected to a brief pat-down search for weapons where the detaining officer has a lawful reason to detain said driver in the patrol car. *Terry* wisely instructs that 'it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.' *Terry*, 392 U.S. at 23, 88 S.Ct. 1868, 20 L.Ed.2d 889. The state's obligation not to violate the individual's Fourth Amendment rights does not command that the police officer forsake reasonable precautionary measures during the performance of his duties." *Evans*, 67 Ohio St.3d at 410, 618 N.E.2d 162.

{¶ 12} After the *Evans* decision, in 2001, the Ohio Supreme Court was asked to determine whether a patdown of the driver was reasonable before placing him in the back seat of a patrol car when there was no belief that he or she was armed and dangerous.

{¶ 13} In *Lozada*, the driver was stopped for speeding. He was able to produce a drivers' license and registration upon request. Still, the trooper told the driver that he would have to sit in the back of the squad car while the license and registration were checked in the car's computer. Before being placed in the squad car, Lozada was frisked. The trooper testified that it was his practice to order the driver into his patrol car after performing a patdown search.

{¶ 14} The *Lozada* court framed the question before it as follows:

{¶ 15} "Thus, we must determine, during a traffic stop, if and when circum-stances dictate that an officer may search a driver for weapons and place him or

her in a patrol car even where the officer has no belief that the driver is armed and dangerous." *Lozada,* 92 Ohio St.3d at 76, 748 N.E.2d 520.

{¶ 16} In resolving the question before it, the court stated:

{¶ 17} "While the intrusion of asking a driver to sit in a patrol car to facilitate a traffic stop may be relatively minimal, the level of intrusion of the driver dramatically increases when the driver is subject to a pat-down search for weapons before entering the patrol car. To subject a driver to such an intrusion, when the underlying reason for placing him or her in the patrol car is mere convenience, would effectively eviscerate the *Terry* standard without justification." Id.

{¶ 18} However, the *Lozada* court, in discussing *Evans,* noted the difference between the two cases, Lozada was able to produce a driver's license when requested; Evans was not. It specifically stated that since Lozada was able to produce a driver's license, under *Evans,* it would have been unreasonable to subject him to a patdown search for weapons. Id. at 77, 748 N.E.2d 520.

{¶ 19} Considering the facts of the case before this court, *Evans* and *Lozada* do not clearly provide that the search of Habel in this instance was reasonable. During the suppression hearing, the officer testified that it is standard procedure to place the offender in the back seat to verify his or her identity. At no time did he testify that he viewed Habel as dangerous or thought she was armed. In fact, he avowed that her clothing was tight and he did not see any bulges indicating a weapon. That said, as in *Evans* and distinguishable from *Lozada,* Habel failed to produce a driver's license or any identification. However, unlike the crime in *Evans,* the crime she was being cited for, riding a bicycle on the sidewalk, is a minor misdemeanor. The general rule is that an offender cannot be arrested for a minor misdemeanor. *State v. Brown,* 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, ¶ 24–25. R.C. 2935.26 provides exceptions to that rule. One exception is if the offender cannot or will not provide satisfactory evidence of his or her identity. R.C. 2935.26(A)(2). As the trial court noted, Habel was not given the opportunity to prove whether she could provide satisfactory evidence of her identity before she was frisked and placed in the cruiser. There is no indication in the record that prior to the search she was given the opportunity to give her name, social security number, date of birth, or other identifying information, or that she refused to provide that information. Furthermore, given that Habel was on a bike and the officers were in a cruiser, Habel could not evade them, and there is no indication in the record that Habel was not cooperative. Consequently, given the facts of this case, for a nonarrestable offense, it does not appear that there was any justification, other than mere convenience, to frisk Habel before placing her in the cruiser to verify her identity.

{¶ 20} Habel asserts that this conclusion is supported by this court's prior decision in *State v. Edwards* (Nov. 12, 1999), Montgomery App. No. 17735, 1999 WL 1034442. Both she and the trial court cite that case for the proposition that a bicyclist stopped for a nonarrestable offense cannot be frisked for the purpose of being placed in the police cruiser after failing to produce any identification.

{¶ 21} Both Habel and the trial court are misreading *Edwards*. This court did not hold that a person stopped for a nonarrestable offense (jaywalking) cannot be frisked for the purpose of being placed in the back of a squad car after failing to provide identification. Rather, that is what the trial court in that case held. Our decision in *Edwards* quotes the trial court's reasoning for finding that the patdown was not justified. The statements that both the trial court and Habel are relying on to support the decision to grant her motion to suppress are found in that quote. Following that quote, we stated that we agreed with the state that the trial court erred when it suppressed the drugs found on Edwards. We explained that although the officer did not articulate the weather conditions as a reason for placing Edwards in the back seat of the cruiser while her identity was being checked, the action of placing her in the cruiser and patting her down prior to that was not unreasonable considering the weather conditions (winter, snow, ice, and cold). This court provided no indication on whether the trial court's reasoning would have been correct had it not been winter with inclement weather. Thus, *Edwards* is not as on point as she or the trial court suggests.

{¶ 22} That said, *Edwards* does not indicate, in this instance, that the trial court erred in suppressing the heroin. Habel was stopped in May at around 5:00 p.m., while it was still light outside, and there is no suggestion in the record that the weather warranted patting Habel down and placing her in the cruiser to verify her identity. Thus, weather cannot be used as a justification for the frisk and placement in the cruiser.

{¶ 23} Furthermore, a recent case out of this court provides more direct support for the conclusion that the trial court's decision to suppress the evidence was correct. *State v. Fritz*, Montgomery App. No. 23054, 2009-Ohio-6690, 2009 WL 4893284. Although we upheld the trial court's decision to deny the motion to suppress because the contraband found during the unreasonable patdown would have inevitably been found in a search performed incident to a lawful arrest for an outstanding warrant, we found that when there was no stated justification in the record for the patdown and placement in the cruiser, the decision to place an offender for a nonarrestable offense (riding a bicycle on the sidewalk) in the back seat of the cruiser to verify his identification was for mere convenience and thus violated the Ohio Supreme Court's decision in *Lozada*. Id. at ¶ 8–10. See also *State v. Fields* (May 17, 2001), 8th Dist. No. 78583, 2001 WL 528098 (finding that a bicyclist's failure to provide identification does not justify a *Terry* search if it

has not been shown that the officer was in reasonable fear for his own or others' safety).

{¶ 24} In the matter at hand, the only possible justification the officer gave for the frisk, other than that it was "standard procedure" to do so, was that Habel was seen getting on her bike in front of a known drug house and this was a high-crime, high-drug area. We have previously held that the officer must have a reasonable individualized suspicion that the offender is armed and dangerous before frisking for weapons. *Roberts,* Montgomery App. No. 23219, 2010-Ohio-300, 2010 WL 334913, at ¶ 18 (reversing the trial court's decision to deny the motion to suppress), citing *Terry,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, and *Maryland v. Buie* (1990), 494 U.S. 325, 334, 110 S.Ct. 1093, 108 L.Ed.2d 276, fn. 2. We indicated that mere presence in a high-crime or high-drug area, by itself, is insufficient to justify the stop and frisk of a person, especially when the officer indicated that the offender did nothing to make the officer worry that the offender would harm him. *Roberts* at ¶ 18–19, citing *State v. Carter* (1994), 69 Ohio St.3d 57, 65, 630 N.E.2d 355.

{¶ 25} Considering the above decisions from our court and the Ohio Supreme Court, we must conclude that the officer's reason for placing Habel in the back of the cruiser was for mere convenience and, thus, violated the Ohio Supreme Court's decision in *Lozada.* The officer provided no other reason than high-crime area and standard procedure for justifying the patdown. The officer did not state that he thought Habel was armed and dangerous or that she was acting in a manner that made him fear for his safety. In fact, he testified that he could not see any bulges that looked like weapons through her tight jeans. The officer also did not give Habel the opportunity to provide satisfactory evidence of her identity pursuant to R.C. 2935.26(A)(2). Furthermore, the record does not indicate that the heroin would have inevitably been discovered. See *Fritz,* Montgomery App. No. 23054, 2009-Ohio-6690, 2009 WL 4893284, ¶ 9–10.

{¶ 26} In conclusion, for all the above reasons, this assignment of error lacks merit. The trial court's decision to grant Habel's motion to suppress is affirmed.

Judgment affirmed.

DONOVAN, P.J., and FAIN, J., concur.

JOSEPH J. VUKOVICH, of the Seventh District Court of Appeals, sitting by assignment.