**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 29, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 13-4009 |
| v. | (D.C. No. 2:12-CR-00082-TC-1) |
| EDWIN AMAYA, | (D. Utah) |
| Defendant - Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

Defendant Edwin Amaya pleaded guilty in the United States District Court

for the District of Utah to one count of possessing a firearm after having

previously been convicted of a felony. *See* 18 U.S.C. § 922(g)(1). He reserved

the right to appeal the denial of his motion to suppress evidence against him. In

this appeal he argues that the district court erred in holding that a police officer

---

[*]After examining the briefs and the appellate record, this three-judge panel
has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.
   This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

who encountered him during a traffic stop was justified in frisking him because the officer had reasonable suspicion that he was armed and dangerous. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm because evidence of Defendant's gang affiliation and his recent federal firearm conviction gave rise to an objectively reasonable belief that he was armed and dangerous.

Defendant does not challenge the district court's following findings of fact: On the night of February 1, 2012, Sergeant Jared Garcia of the Utah Department of Public Safety was observing a suspected drug den in Magna, Utah. He observed a car arrive at the house and a passenger enter the house and return to the car two minutes later. Garcia followed the car and stopped it when he saw that its rear license plate was insufficiently illuminated. He first spoke with the passenger in the back seat. When she opened her door, Garcia smelled methamphetamine inside the car. He also observed that Defendant, who was sitting in the front passenger seat, displayed signs of recent drug use including bloodshot eyes with bags underneath, heavy breathing, and drowsiness. Garcia noted that Defendant was dressed in blue, a color associated with a local gang (the Sureños), and that he had a tattoo on his wrist that appeared to be a gang symbol. Garcia asked whether Defendant was a gang member. Defendant replied that he was not and became agitated.

While checking the driver's documents in his cruiser, Garcia was joined by Deputy United States Marshal Richard Simonelli. Simonelli checked Defendant's

criminal record and discovered that he was a documented member of the Sureños gang and on federal probation. Simonelli also knew that the car's driver was on federal probation, and that people who are on federal probation are ordinarily not permitted to associate with one another. Garcia filled Simonelli in on the surveillance leading to the traffic stop, the indicators of drug use, and Defendant's demeanor and attire. He also informed Simonelli that the backseat passenger had been identified as a drug dealer.

Simonelli went to Defendant's door and knocked on the window. Defendant, without being directed to do so, got out of the car. When Simonelli mentioned Defendant's documented affiliation with the Sureños, he denied any gang affiliation but stated that for some reason he was recorded as a Crip and that he was on federal probation for a gun charge. Simonelli observed signs of Defendant's nervousness—not being able to sit still and sweating (on a winter night). Noting that Defendant's blue shirt and blue lanyard were consistent with Sureños attire, Simonelli told Defendant that he wished to look at Defendant's belt to determine if it was of a type commonly worn by gang members. Simonelli reached out to lift the left side of Defendant's shirt, but Defendant immediately placed his hand on the right side of his shirt, and Simonelli did not lift the shirt. Instead, he directed Defendant to move to the back of the car and place his hands behind his head so that Simonelli could frisk him for weapons. As Simonelli placed his hands on top of Defendant's hands, Defendant broke away, ran to a

nearby fence, and tossed an object over it. Defendant was soon subdued and arrested, and officers recovered a firearm from the other side of the fence.

After he was charged in federal court with being a felon in possession of a firearm, Defendant moved to suppress the gun on the ground that Simonelli lacked reasonable suspicion to believe that Defendant was armed and dangerous when he attempted to lift Defendant's shirt. The district court denied the motion.

In reviewing the denial of Defendant's motion to suppress, "we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless clearly erroneous, and review *de novo* the ultimate determination of reasonableness under the Fourth Amendment." *United States v. Polly*, 630 F.3d 991, 996 (10th Cir. 2011) (internal quotation marks omitted). The parties agree that *Terry v. State of Ohio*, 392 U.S. 1 (1968), provides the appropriate framework to assess whether Defendant's Fourth Amendment rights were violated. Under *Terry*, an officer possesses

> a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

*Id.* at 27. Defendant asserts that if his Fourth Amendment rights were violated by the attempted search of his person, evidence of his flight and the gun he discarded

must be excluded as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963) (internal quotation marks omitted).

The parties focus on Simonelli's abortive attempt to lift Defendant's shirt as the relevant search, but that focus is misplaced. There is no reason to believe that Simonelli's reach towards Defendant's waist led to any evidence that Defendant now seeks to have suppressed. According to the district court's account of the facts (challenged by neither party on appeal), Defendant did not flee or dispose of the gun until Simonelli placed his hands on Defendant's after instructing him to go to the rear of the car and place his hands on his head. To be sure, Defendant's reaction to Simonelli's attempt to lift his shirt—reaching for his own waist—may have suggested to Simonelli that Defendant was carrying a weapon. But Simonelli did not need that evidence to justify the attempted frisk of Defendant that precipitated his flight.

Two factors other than Defendant's reaction to Simonelli's reach for his shirt were sufficient support for an objectively reasonable belief that Defendant was armed and dangerous: (1) his documented membership in a street gang and display of gang colors, and (2) his prior firearm conviction.

Our decision in *United States v. Garcia*, 459 F.3d 1059 (10th Cir. 2006), illustrates the significance of gang ties to a determination of reasonable suspicion that a suspect is armed and dangerous. After police entered an apartment suspected of being a hub for drug distribution, they encountered the defendant in

a room with one known gang member and another person dressed in gang colors. *See id.* at 1066–67.  Although the defendant himself had no previously known or currently displayed gang affiliation, we concluded that it was nonetheless "reasonable for the officers to believe that the persons present in the front room [including the defendant], who were all apparently connected to drug transactions involving known and suspected gang members, all had some degree of gang affiliation." *Id.* at 1067.  We stated that a connection between guns and gangs "resonates with common sense and ordinary human experience." *Id.* at 1066 (internal quotation marks omitted).  And in light of that common-sense connection between street gangs and dangerous weapons, we concluded that defendant's apparent gang connection "support[ed] the reasonableness of a weapons frisk." *Id.* at 1067.  Here, Defendant's gang connections are clearer than those we found probative in *Garcia*.  Defendant was a documented member of the Sureños gang and was wearing Sureños colors.

Defendant's admission that he was on probation for a federal gun charge also supported Simonelli's reasonable suspicion that he was armed and dangerous. The information that Defendant had committed an offense involving illegal possession or use of a firearm raised the chances that he was currently armed and dangerous, because it demonstrated (1) a past willingness to flout federal firearms restrictions and (2) access to weapons.  As we have recognized, a suspect's criminal history can be relevant to a determination of present dangerousness.  *See*

*United States v. Rice*, 483 F.3d 1079, 1084 (10th Cir. 2007) (citing suspect's "lengthy and violent criminal record" as one factor justifying reasonable suspicion that suspect was armed).

Defendant's gang ties and federal firearm conviction were sufficient to warrant Simonelli's belief that Defendant was presently armed and dangerous, justifying the minimal intrusion attendant to a brief patdown search for weapons. Thus, Simonelli's attempt to conduct a patdown did not violate Defendant's Fourth Amendment rights, and the district court correctly concluded that the evidence of Defendant's flight and the gun he threw over the fence should not be suppressed.

We AFFIRM Defendant's conviction.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge