[Cite as *State v. Thip*, 2016-Ohio-4970.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 15AP-403 |
| | | (C.P.C. No. 13CR-5774) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Tim Thip, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on July 14, 2016

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Valerie B. Swanson*, for appellee.

**On brief:** *Cline, Mann & Co., LLC*, and *Richard A. Cline*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} This is an appeal by defendant-appellant, Tim Thip, from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas on appellant's plea of no contest to carrying a concealed weapon following the court's denial of his motion to suppress.

{¶ 2} On October 29, 2013, appellant was indicted on one count of carrying a concealed weapon, in violation of R.C. 2923.12, a felony of the fourth degree. Appellant entered a plea of not guilty. On August 4, 2014, appellant filed a motion to suppress. On August 25, 2014, plaintiff-appellee, State of Ohio, filed a memorandum contra appellant's motion to suppress.

{¶ 3}   On October 21, 2014, the trial court conducted a hearing on the motion to suppress.   During the hearing, the state presented the testimony of one witness, Columbus Police Officer Benjamin S. Leppla, a member of the police force for approximately nine years.

{¶ 4}   On August 23, 2013, Officer Leppla and his partner, Officer Dawson, responded to a dispatch of a disturbance outside a residence on South Harris Avenue, involving underage drinking and smoking.   The police dispatcher received the call at 10:38 p.m., and dispatched the officers around 11:30 p.m.   South Harris Avenue is a residential one-way street, permitting northbound traffic with parking on both sides of the street.   With respect to "[t]hat area in particular," Officer Leppla testified that "we get dispatched on numerous calls for service from simple neighbor disputes to shootings, shots fired, kids playing in the street.   It's very busy in that area."   (Oct. 21, 2014 Tr. at 6.) He characterized the area as between a moderate and high crime area.

{¶ 5}   Upon approaching the area, officers observed at least one dozen people in the front yard and on the porch.   One individual, subsequently identified as appellant, was outside on the south side of the house urinating; some of the other individuals ran inside the house as officers approached.   Officer Leppla turned on the spotlight attached to the cruiser in order to see the individual at the side of the house.   Officer Leppla exited the cruiser as the person started "to jog back towards the house."   (Oct. 21, 2014 Tr. at 8.) Officer Leppla believed the individual was trying to run inside the house in order to avoid contact with officers, but Officer Leppla stopped him before he entered the house.   As the individual turned toward the officers, Officer Leppla immediately recognized appellant by name, and knew that he was a member of the "tiny rascal gang."   (Oct. 21, 2014 Tr. at 12.) Officer Leppla also recognized a few other gang members.

{¶ 6}   Officer Leppla told appellant to "stop," and appellant stopped and sat next to other people in the yard.   (Oct. 21, 2014 Tr. at 29.)   Officer Leppla "immediately" escorted appellant away from the front porch to the cruiser that was parked just south of the front of the house.   (Oct. 21, 2014 Tr. at 9.)   Officer Leppla testified that he escorted appellant toward the cruiser to investigate further because there were still approximately six to ten individuals outside and the situation was "very chaotic."   (Oct. 21, 2014 Tr. at

31.)  When they reached the cruiser, Officer Leppla conducted a pat down to search for weapons and found a firearm in appellant's waistband.

{¶ 7}  Officer Leppla testified he was familiar with the "tiny rascal gang," and that he knew appellant was a member of that gang; Officer Leppla also recognized a few other gang members that were present.  During direct examination, Officer Leppla testified as follows:

> [Prosecutor] Q. Are you familiar at all with the tiny rascal gang?
>
> [Officer Leppla] A. Yes, sir.
>
> Q. And did you recognizance [sic] anyone during this incident as being associated with that gang?
>
> A. Yes, sir.
>
> Q. Was [appellant] one of those individuals?
>
> A. Yes, sir.
>
> Q. And were there others?
>
> A. There were a few others that I recall.
>
> Q. Have you had previous contacts with members of the tiny rascal gang?
>
> A. I have.
>
> * * *
>
> Q. Have you had and been involved on any runs involving the tiny rascal gang?
>
> A. I have.
>
> Q. What sort of runs?
>
> A. From domestic disputes with significant others to drive-by shootings; then as a victim of a serious crime, whether it be a *shooting* or just stopping, talking to individuals outside of areas they hang out -- I mean, numerous. There's a number of areas that we come into contact with, whether in a vehicle, a

traffic stop or if there's a call for a disturbance that they have been involved with, or much more serious with shootings that they are either a victim or a suspects of, after speaking with them or witnesses or to the victims.

Q. Is it unusual to have a call involving the tiny rascal gang that involves weapons?

A. It's not unusual, sir.

(Emphasis added.) (Oct. 21, 2014 Tr. at 12-13.)

{¶ 8} Officer Leppla further testified that he patted down appellant because he believed appellant "maybe had a weapon on him, whether it's a knife, gun, some sort of instrument that can be used as a weapon." (Oct. 21, 2014 Tr. at 15.)

{¶ 9} The trial court denied appellant's motion to suppress, and appellant subsequently entered a no contest plea to the indictment. The trial court accepted appellant's no contest plea and found him guilty of carrying a concealed weapon. The trial court imposed a sentence of three years community control under basic supervision.

{¶ 10} On appeal, appellant sets forth the following assignment of error for our review:

The trial court erred in denying Defendant's Motion to Suppress Evidence because the officer's warrantless search of Mr. Thip violated the Fourth Amendment of the United States Constitution and Article I, § 14 of the Ohio Constitution.

{¶ 11} Under his single assignment of error, appellant asserts the trial court erred in denying his motion to suppress. Under Ohio law, "[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Accordingly, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Further, "[a]ccepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial

court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 (4th Dist.1997).

{¶ 12} In general, "[t]he Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, as well as Ohio Constitution, Article I, Section 14, prohibit the government from conducting warrantless searches and seizures, rendering them per se unreasonable unless an exception applies." *State v. Goodloe*, 10th Dist. No. 13AP-141, 2013-Ohio-4934, ¶ 6.

{¶ 13} One of these exceptions, as recognized by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968), is an investigatory stop, where a police officer is permitted to "stop or detain an individual without probable cause when the officer has a reasonable suspicion, based on specific, articulable facts, that criminal activity is afoot." *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 16 (10th Dist.). *Terry* permits a police officer to "conduct a brief warrantless search of an individual's person for weapons if the officer has a reasonable and articulable suspicion that the 'individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others.' " *State v. Cordell*, 10th Dist. No. 12AP-42, 2013-Ohio-3009, ¶ 13, quoting *Terry* at 24. The purpose of such a limited search "is not intended to discover evidence of a crime, but to allow the officer to pursue his duties 'without fear of violence.' " *Id.*, quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972).

{¶ 14} In *Knowles v. Iowa*, 525 U.S. 113 (1998), the United States Supreme Court found that "[a] routine traffic stop" of an offender who has committed a misdemeanor is "analogous to a so-called '*Terry* stop.' " *Id.* at 117. This court has applied *Terry* in determining the constitutionality of the search of a pedestrian stopped by police for a misdemeanor traffic offense. *See State v. Price*, 10th Dist. No. 99AP-806 (Sept. 21, 2000); *State v. Moorer*, 10th Dist. No. 14AP-224, 2014-Ohio-4776. Whether an investigatory stop is reasonable depends upon the totality of the circumstances surrounding the incident. *State v. Williams*, 51 Ohio St.3d 58, 60 (1990). In evaluating the validity of a *Terry* stop, a court must consider the totality of the circumstances as "viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). "Reasonable suspicion entails some minimal level of objective justification [for making a

stop], that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *Jones* at ¶ 17, quoting *State v. Jones*, 70 Ohio App.3d 554, 556-57 (2d Dist.1990), citing *Terry* at 27.

{¶ 15} In this case, appellant concedes that the officer was justified in stopping him to make further inquiries. However, appellant argues that Officer Leppla was not justified in conducting a pat-down search. A determination that the articulable facts justify the initial detention under *Terry* does not end the inquiry, as "an officer does not have authority to automatically conduct a search of a detainee when a valid stop has been initiated." *Moorer* at ¶ 21, citing *Akron v. Bowen*, 9th Dist. No. 21242, 2003-Ohio-830, ¶ 9.

{¶ 16} Here, the trial court found the detention and subsequent pat down were permissible because Officer Leppla intended to issue a citation for public urination and the officer testified to specific and articulable facts regarding why he conducted the pat down, including the time of night, the officer's recognition of appellant from previous interaction, and his knowledge that appellant was associated with a gang. The trial court found the intrusion was limited and proper.

{¶ 17} For their own protection and the protection of others, police officers may conduct pat-down searches for weapons during investigative stops if the officers have reason to believe the suspect is armed and dangerous. *State v. Millerton*, 2d Dist. No. 26209, 2015-Ohio-34, ¶ 27, citing *Andrews* at 89. *See also Terry* at 27. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry* at 27. The officer must "have a 'reasonable individualized suspicion' that the offender is armed and dangerous" before he may conduct a pat down for weapons. (Emphasis omitted.) *State v. Habel*, 190 Ohio App.3d 393, 2010-Ohio-3907, ¶ 24 (2d Dist.), quoting *State v. Roberts*, 2d Dist. No. 23219, 2010-Ohio-300, ¶ 18, citing *Terry*. In assessing the totality of the circumstances, we "generally consider factors such as the time of day, the experience of the officers involved, and suspicious activities by the defendant, both before and during the stop." *State v. Broughton*, 10th Dist. No. 11AP-620, 2012-Ohio-2526, ¶ 19, citing *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988).

{¶ 18} In this case, Officer Leppla, an officer with nine years experience, responded around 11:30 p.m. to a dispatch regarding a disturbance in an area he characterized between a moderate and high crime area. There were at least one dozen people in the front yard and on the porch when officers arrived. Officer Leppla believed appellant was trying to run inside the house in order to avoid contact with the police. Officer Leppla recognized appellant as a member of a gang, and he recognized several other gang members who were also present. According to Officer Leppla, it was not unusual to respond to dispatches involving that particular gang and weapons. Officer Leppla immediately escorted appellant toward the cruiser to investigate further because there were still approximately six to ten individuals outside and the situation was "very chaotic." (Oct. 21, 2014 Tr. at 31.) Officer Leppla testified he removed appellant from the yard because it was a chaotic situation and for officer safety. He believed the suspect may have had a weapon based on the situation presented and the officer's past interaction with appellant and the particular gang (the tiny rascal gang) and its activities, including weapons related incidents.

{¶ 19} While "gang affiliation alone cannot create a reasonable suspicion to support a search or seizure, it may be an appropriate factor in determining if reasonable suspicion exists." *United States v. Guardado*, D.Utah No. 2:10-CR-1042-TC (Mar. 22, 2011). *See also United States v. Amaya,* 530 Fed.Appx. 767, 770 (10th Cir.2013) (noting "significance of gang ties to a determination of reasonable suspicion that a suspect is armed and dangerous"); *United States v. Garcia*, 459 F.3d 1059, 1067 (10th Cir.2006) (although not necessarily determinative by itself, defendant's gang connection "support[ed] reasonableness of a weapons frisk"); *United States v. Miranda,* 393 Fed.Appx. 243, 245 (5th Cir.2010) (officer's knowledge of defendant and his gang activity, coupled with officer's "experiential knowledge concerning the La Primera gang and its violent proclivities (including its tendency to carry weapons), support[ed] the suspicion that [the defendant] may have been armed and dangerous"); *United States v. Barboza*, 412 F.3d 15, 15-16 (1st Cir.2005) (upholding legality of a protective search when officers encountered a suspect on a street known for gang violence and based on police intelligence that the suspect was a "gang-affiliated individual who routinely carried a firearm").

{¶ 20} Ohio courts have also considered gang affiliation in addressing whether an officer had reason to believe an individual may be armed and dangerous. *See, e.g., In re M.P.*, 1st Dist. No. C-140373, 2015-Ohio-1533, ¶ 17 (pat-down search of defendant was justified "for the safety of everyone on the scene" where officers had reason to believe he might be armed and dangerous based upon his close proximity to gang member that officers suspected could be armed).

{¶ 21} In the instant case, under the totality of the circumstances, we find that the combination of factors that confronted Officer Leppla were sufficient to warrant his belief that appellant might be armed and dangerous. We agree, therefore, with the trial court's determination that Officer Leppla's action in conducting a pat-down search of appellant was reasonable and justified under these circumstances.

{¶ 22} Based on the foregoing, the trial court did not err in denying appellant's motion to suppress. Accordingly, appellant's single assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN, P.J., and TYACK, J., concur.

_____