[Cite as *State v. Howard*, 2021-Ohio-1792.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 20AP-08<br>(C.P.C. No. 18CR-3204) |
| v. | : | |
| Kamashon D. Howard, | : | No. 20AP-09<br>(C.P.C. No. 18CR-4209) |
| Defendant-Appellant. | : | (REGLUAR CALENDAR) |

D E C I S I O N

Rendered on May 25, 2021

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Kimberly M.* Bond, for appellee.

**On brief:** *Jeremy A. Roth*, for appellant.

APPEALS from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1}   In these consolidated appeals, defendant-appellant, Kamashon D. Howard, appeals the judgments of the Franklin County Court of Common Pleas, following his plea of no contest to carrying a concealed weapon in case No. 20AP-08 and possession of cocaine with a firearm specification in case No. 20AP-09. Howard now asserts that in both cases "[t]he trial court erred when it overruled [sic] appellant's motion to suppress finding that the detenetion [sic] and search of appellant were legal." (Appellant's Brief at 1.)

{¶ 2}   The charges in both cases arose from a stop, detention, and frisk of Howard at approximately 10 p.m. on May 17, 2018. On that evening, Columbus Police Officer Michael Shannon and his partner were engaged in a "proactive bicycle patrol" of a residential area in the Hilltop. Officer Shannon is a 17-year patrol officer and had been working as a bicycle patrol officer in that area for the preceding ten years. *See generally* July 25, 2019 Tr. on Mot. to Suppress at 4. Officer Shannon and his partner were riding east on Olive St. when they noticed a young black man on the corner of Olive St. and South Terrace Avenue, pacing back and forth. (Tr. at 8.) As they approached the corner, the man

apparently noticed them and walked away. (Tr. at 8-9.) He walked south from the corner down South Terrace Avenue, and up onto the porch of the second house from the corner, 125 South Terrace Avenue. (Tr. at 10.) Officer Shannon was familiar with the residence and knew that the occupants were an elderly couple who were unlikely to have a young visitor at that time of night. He also observed that it was a quiet night, that the man did not knock on the door, and that it did not seem he had rung a doorbell either. (Tr. at 10-11.) Officer Shannon and his partner decided to approach the man and ask questions. They were subsequently able to identify the man as defendant Kamashon D. Howard.

{¶ 3} Officer Shannon's bodycam video of the encounter with Howard was admitted at a hearing on Howard's motion to suppress. *See* State's Ex. A. Because he did not turn on his bodycam until he walked up and began asking questions of Howard, there is no audio for the first minute of the video. During the video, Officer Shannon—apparently positioned at the entryway to the porch—can be heard questioning Howard, who is sitting on the porch railing in front of the door to the residence.

{¶ 4} Officer Shannon first asks Howard whose house this is, and Howard replies that he does not know whose house it is but that he is "waiting on a girl." *Id.* at 1:07. Howard claims that his car is "right there" on the street, and repeatedly attempts to put his left hand into his pocket. Officer Shannon asks him several times not to put his hand in his pocket. Then, in response to Officer Shannon's question whether he has his driver's license, Howard attempts to retrieve his keys from his right pocket, and Officer Shannon again tells him not to put his hands in his pockets. *Id.* at 2:24. Howard indicates that his ID may be in his car, and that he wants to reach into his right pocket to get his keys. *Id.* at 3:36. Officer Shannon indicates that he will pat Howard down, stating that "I'm just going to make sure you don't have any weapons and then you can grab your key." *Id.* at 3:45. He retrieves Howard's cell phone from his hand and places it on the ledge behind him and begins to pat Howard down. Officer Shannon retrieves the keys from Howard's right pocket, but notices that Howard also has a visible and large wad of cash in that same pocket. *Id.* at 4:30. Officer Shannon places the keys on the ledge with Howard's phone and continues the pat down. Within a few seconds, he feels a firearm at the bottom of Howard's right leg, and immediately tells Howard "you don't fucking move—gun." *Id.* at 4:50. Officer Shannon handcuffs Howard and he and his partner arrest him; Officer Shannon then retrieves the

gun from Howard's leg and calls for a cruiser. Officer Shannon's partner can then be heard on the bodycam video stating that he felt a baggie in Howard's left pocket, and Officer Shannon states "yeah, I felt that too." *Id.* at 8:19. That bag is retrieved after Howard is removed from the porch, and after testing is found to contain a quantity of cocaine. *Id.* at 9:05.

{¶ 5}     Howard was charged for possessing the concealed firearm, and under a different case number he was charged with possessing the cocaine with a specification attached. He filed a motion to suppress the fruits of the search, arguing that the officers did not have reasonable suspicion to the detention and search. Following a hearing, the trial court overruled the motion:

> THE COURT: All right. We're here today. We had previously had a hearing on the defendant's motion to suppress evidence. The Court received the testimony of Officer Shannon as well as the defendant and has reviewed the body-worn camera footage as well.
>
> With respect to the facts in this matter, the Court finds Officer Shannon testified that he and his partner observed the defendant for a duration of time. The defendant was standing on the corner of a high-crime neighborhood, appeared to be pacing back and forth. His activities, to the officer, appeared that the defendant was potentially waiting for a drug deal to occur.
>
> As Officer Shannon testified, once the defendant saw the officers, he reacted and walked in a direction away from the officers. The defendant ultimately went up onto a porch of a house.
>
> Officer Shannon was familiar with the residence of the house being an older couple that he had had interactions with in the past and, therefore, believed that it was not likely the defendant was associated with anyone at the house.
>
> Upon encountering the defendant, Officer Shannon believed that he continued to act suspiciously, that he was untruthful about knocking on the door and about why he was there. The defendant also sat on the railing of the porch in a way in which the officer reasonably believed that the defendant was evading his body from the officer, that he was hiding something. And as shown on the body-cam footage, the defendant did continue to place his hands in his pockets when asked not to do so.

> The issues in this motion are whether there's a detention, whether that detention was lawful. And if there was a detention, was the pat-down for weapons justified?
>
> It is the Court's finding in this case that the officer did have reasonable suspicion of criminal activity and it was reasonable for the officer to believe that the defendant was armed and to conduct the pat-down.
>
> The Court makes that finding based on the totality of the circumstances, specifically, the time of day; the area in which the conduct occurred; the initial conduct of the defendant; the conduct of the defendant upon seeing the officers; the statements made by the defendant to the officer; and the defendant's behavior during the encounter. All of that the Court finds as a basis for the officer to reasonably believe that -- to have a reasonable suspicion of criminal activity and to reasonably believe that the defendant was armed.
>
> For all of those reasons, the Court is going to deny the motion to suppress in these respective cases.

(Aug. 22, 2019 Tr. at 2-4.) The defendant subsequently entered a no contest plea, was found guilty, and was sentenced according to law. These timely appeals followed.

{¶ 6} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court is in the "best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Therefore, appellate courts afford deference to the trial court's factual determinations and accept such determinations if they are supported by "competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). We "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶ 7} The sole question in this case is whether the detention and pat down of Howard was warranted under *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968). Under *Terry*, a search warrant is not required for an officer to conduct an investigatory stop and pat down, so long as the stop is based on "reasonable suspicion." We have previously summarized the law in this area as follows:

> [A]n investigatory stop * * * is permitted to "stop or detain an individual without probable cause when the officer has a reasonable suspicion, based on specific, articulable facts, that criminal activity is afoot." *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 16, 936 N.E.2d 529 (10th Dist.). *Terry* permits a police officer to "conduct a brief warrantless search of an individual's person for weapons if the officer has a reasonable and articulable suspicion that the 'individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others.' " *State v. Cordell*, 10th Dist. No. 12AP-42, 2013-Ohio-3009, ¶ 13, quoting *Terry* at 24. The purpose of such a limited search "is not intended to discover evidence of a crime, but to allow the officer to pursue his duties 'without fear of violence.' " *Id.*, quoting *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972).

*State v. Thip*, 10th Dist. No. 15AP-403, 2016-Ohio-4970, ¶ 13.

{¶ 8} But in contrast to an investigatory stop, a "consensual encounter" between a law enforcement officer and a citizen does not require a reasonable suspicion. In general, a "police officer, like any other citizen, may approach an individual in a public place, engage that individual in conversation, and request information or assistance. So long as the person is free not to respond and to walk away, no Fourth Amendment interest in engaged." Gianelli and Katz, *Ohio Practice Criminal Law* 3d. Ed., Vol. I, Section 18:3. As *Terry* recognized, "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred." *Terry*, 392 U.S. at 20, fn.16.

{¶ 9} Howard contends that "the detention and search of Appellant was not supported by reasonable suspicion and/or exceeded the scope of a *Terry* stop." (Appellant's Brief at 11.) Howard further suggests that the *Terry* standard governs the initial approach and questioning, because the officers had blocked his exit from the porch and because Officer Shannon testified that he was not going to let Howard leave until he answered some questions. Accordingly, we must resolve whether and at what point Officer Shannon had a reasonable suspicion that Howard was engaged in criminal activity sufficient to detain him and pat him down. If the initial detention and pat down were reasonable, then the entire encounter and search were reasonable, since Officer Shannon discovered the firearm

strapped to Howard's leg during the pat down and the suspected drugs were discovered as an incident to Howard's arrest for the concealed firearm.

{¶ 10} Howard argues that "the officers did not have reasonable suspicion to approach him based on their hunch that he was waiting to conduct a drug deal." (Appellant's Brief at 13.) But Howard's argument here misstates the law—officers generally do not need "reasonable suspicion to approach," as police encounters with the public virtually always begin as consensual. *Terry*, 392 U.S. 1 at 20. Howard has provided no basis to suggest that the initial approach was anything other than a consensual encounter.

{¶ 11} And even if the initial approach of Howard had required that Officer Shannon have a reasonable suspicion of criminal activity, that low bar has been met here. Given the time of night, Howard's actions in walking onto the porch without knocking on the door, the bodycam video demonstrating that Howard was shielding half his body from view, and Howard's inability to answer Officer Shannon's basic questions—who lived in the house, the last name of the girl he claimed to be meeting, whether he had his ID on his person— created a reasonable suspicion justifying further investigation and a detention. Moreover, Officer Shannon's initial pat down of Howard is closely tied to *Terry's* underlying safety rationale. *See Cordell*, 2013-Ohio-3009, at ¶ 13, quoting *Terry* at 24. Howard was shielding part of his body from the view of the officers, had reached into his pockets several times during the initial questioning despite being asked not to do so, and Officer Shannon gave Howard the specific warning that he was patting down Howard simply to ensure that he didn't have weapons.

{¶ 12} On these facts, we have little difficulty concluding that the trial court's analysis of the encounter was correct, and that Officer Shannon's detention and pat down of Howard were justified by his reasonable suspicion that Howard was engaged in illegal activity. Accordingly, the trial court's ruling denying Howard's motion to suppress was not error. Howard's single assignment of error is overruled, and the judgments of the Franklin County Court of Common Pleas are affirmed.

*Judgments affirmed.*

KLATT and ZAYAS, JJ., concur.

ZAYAS, J., of the First Appellate District, sitting by assignment in the Tenth Appellate District.

————————————